## Anderson's Estate.

## Hay's and Kerr's Appeals.

A. insured his life in favor of his wife, who died intestate in his lifetime, leaving an only child. A. afterwards died, intestate and insolvent, the child surviving him. *Held*, that the proceeds of the policy belonged to the estate of the wife, and under the intestate laws was to be distributed, share and share alike, between her child and the estate of her husband.

October 6th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Four appeals from decrees of the Orphans' Court made in the settlement of the account of Malcolm Hay, Esq., administrator of the estate of Margaret H. Anderson, deceased.

The facts as set forth in the petition of Mr. Hay, for a hearing of his account were in substance as follows : That petitioner settled an account of his administration of the estate of Mrs. Anderson which was confirmed by the court on the 17th of March 1876, in which account he charged himself with $10,000, received from the Ætna Life Insurance Company of Hartford, Connecticut, being the proceeds of a policy of insurance upon the life of William J. Anderson, husband of the decedent, Margaret H. Anderson; that in 1870, William J. Anderson took out this policy of $10,000 through the company's agent in Pittsburgh, " the said sum insured to be paid at the office of the company in Hartford, to his wife, Margaret H. Anderson, her executors, administrators, or assigns, within ninety days after due notice and proof of the death of the said insured during the continuance of the policy;" that on the 15th of February 1872, Mrs. Anderson died intestate without any debts, and leaving surviving her W. J. Anderson, her husband, and an only child, Grace, for whom, after the death of her father, Joseph W. Kerr, Esq., was appointed guardian ; that William J. Anderson paid all the premiums on said policy until his death, on the 27th of March 1875 ; that said W. J. Anderson made no disposition of said policy during his lifetime and his estate is insolvent ; that soon after the death of W. J. Anderson, upon communication being made to the Ætna Life Insurance Company, said company refused to pay the amount to any other person than the legal representatives of Margaret H. Anderson, and for the purpose of saving any delay, expense or litigation in the collection of the policy, and with the understanding between them that all questions as to who were entitled to the money arising therefrom should afterwards be determined by this court before it went out of the hands of the petitioner, it was arranged between petitioner and Joseph W. Kerr, guardian, as aforesaid, that letters of administration upon the estate of Margaret H. Anderson should be issued to petitioner. This was accordingly done and the money collected from the insurance company.

[Anderson's Estate.]

It is now claimed that the amount of said life insurance policy was an asset of the estate of William J. Anderson, and not of the estate of Margaret H. Anderson; and demand has been duly made upon the petitioner in behalf of the estate of said William J. Anderson for the proceeds of said policy. He therefore prayed the court to review and to rehear his said account and to permit the same to be reformed and restated, so as to discharge it of the sum received by petitioner from said policy.

Letters of administration were also granted to Mr. Hay on the estate of Mr. Anderson, and a similar petition for review was filed by him as said administrator and with a like prayer.

The guardian of Grace Anderson demurred to this petition, and the court, Hawkins, P. J., sustained the demurrer, saying:—

" The question in the present case is not whether Mrs. Anderson had an absolute title to the policy; *that* she must be presumed to have had until the contrary appears; but whether she had *less* than the absolute title. By the terms of the policy the maturity of the insurer's obligation followed the death of the insured, and is independent of the life of the beneficiary. The sum insured is ' to be paid to Mrs. Margaret H. Anderson, her executors, administrators or assigns,' within a specified time after the death of Mr. Anderson. No one else is mentioned as having an interest in the proceeds of the policy.

" The policy contains no limitation, reservation, exception, nor power of revocation affecting the interest of Mrs. Anderson. There is, it is true, a clause of forfeiture attached to the non-payment of premiums; but the right to enforce it, which belongs to the insured alone, has never been asserted. It is not pretended that there was any ground to claim it. That the contract continued in full life until the death of Mr. Anderson is evidenced by the payment of the sum insured. The conditions of the policy were all complied with, and the only party who had right to cancel the policy voluntarily paid the sum insured to the party for whose benefit the contract was made and to whom the policy directed it to be paid. No one else is interested to claim title to the fund as against the petitioner. There is no privity between him and the estate of Mr. Anderson. The act of Mr. Anderson in paying the premiums was purely voluntary and lacked the essentials of a contract. The title of Mrs. Anderson was vested and absolute, and could only be divested by consent or the act of law. The payment of the premiums did not give but merely operated to preserve the life of the contract. It did not make him either the legal or the equitable owner of the policy. At most, his administrator could only claim that he became creditor of the estate of Mrs. Anderson to the extent of the premiums paid after her death. The sum insured was paid by virtue of the original contract of insurance and the estate of Mr. Anderson can have no valid claim of *title* to the fund. It belongs to and

[Anderson's Estate.]

constitutes part of the estate of Mrs. Anderson by virtue of the contract.

" It becomes, therefore, the duty of the petitioner to maintain and defend the title of his decedent to the proceeds of this policy. He is, therefore, not a " party interested" to have a review. The facts alleged might perhaps justify a suspension of the distribution, but the petitioner cannot be heard to dispute his own title, and the rule must be discharged.

" The only question raised in the proceedings was that of *title*, and the decision is therefore limited to that question. The question of *distribution* will be determined when raised."

Mr. Hay took an appeal in each case. The question then arose as to how the fund should be distributed ; whereupon the court awarded the net one-half to Mr. Kerr, as the guardian of Grace Anderson, and the other net half to Mr. Hay, as administrator of W. J. Anderson ; the court, Hawkins, P. J., in an opinion saying :—

" There are two questions involved in this matter : 1. Whether the policy of insurance on the life of W. J. Anderson was personal estate and subject to the ordinary rules of succession ; and, 2. If so, whether the proceeds of that policy are exempt from the claims of the creditors of W. J. Anderson, deceased.

" 1. The statutory laws of Pennsylvania relating to decedents recognise but two classes of property as being capable of descent and succession, real and personal estate ; and the rules of descent and succession are intended to be exclusive of all others, with the exception of those governing entailments and trust estates. ' The real and personal estate of a decedent, whether male or female, remaining after payment of all just debts and charges, which shall not have been sold, or disposed of by will, or otherwise limited by marriage settlement,' are directed, by the Act of April 8th 1833, Pamph. L. 315, to be ' divided and enjoyed' in a specified manner. If. therefore, the fund in question is capable of transmission, it must be so by virtue of these laws. Mr. Justice READ, speaking of policies of life insurance, said, in Elliot's Appeal, 14 Wright 75, that ' these policies were securites for money, valuable choses in action which could be sold at public or private sale, and are included in the general words personal estate or property, and would pass under that head by deed or will.' If they would pass by deed or will, they would pass under the intestate laws. The legal title to the personal estate devolves upon the administrator, as of the date of the death of the owner, for the purpose of collection, and of distribution amongst the parties entitled by virtue of the intestate laws. The 15th section of the Act of March 15th 1832, Pamph. L. 139, requires him to file an inventory of the ' goods, chattels and credits,' which is the generic expression for things personal as distinguished from things real, of his decedent. The 3d section of the Act of February 24th 1834, Pamph. L. 73,

provides that 'whenever personal property or assets of any kind not contained in the original inventory come to the knowledge of the auditor afterward, a supplemental inventory shall be filed; and the 5th section of the same act provides that 'all notes, bonds or other evidences of debt, also all claims or demands for money or any other personal property owned or held by the decedent at the time of his death,' shall be included in the inventory. It is now settled law that contingent and executory interests and possibilities in personal estate are transmissible to the administrator: Purefoy v. Rogers et al., 2 Saund. 388, notes; 4 Kent 262. It seems clear, therefore, that the policy of insurance on the life of W. J. Anderson devolved upon the administrator at the death of Mrs. Anderson: Keller v. Gaylor, 40 Conn. 343. One of the conditions of the bond prescribed by the 21st section of the Act of March 15th 1832, is that the administrator shall, within a specified time after the grant of letters, deliver and pay all the rest and residue of the said 'goods, chattels and credits' which passed into his hands, 'to such person or persons' as the Orphans' Court, 'by their decree or sentence, pursuant to law, shall limit and appoint.'

"The only persons to whom the 'goods, chattels and credits' which were of Margaret H. Anderson, can be delivered and paid pursuant to law, are the representatives of W. J. Anderson, deceased, and Grace Anderson, who must take shares. The 9th section of the Act of April 11th 1848, Pamph. L. 537, provides that 'when a married woman, possessed of separate personal property, shall die intestate,' her 'estate shall * * * be distributed as follows: * * * If such married woman leave a child or children living, her personal estate shall be divided amongst her husband and such child or children, share and share alike.' The 'persons' entitled under this act must be ascertained as of the date of the death of the intestate. 'Whenever a married woman shall die intestate' and 'leave a child or children living,' 'such child or children' shall take with the surviving husband equal shares. Whilst the legal title to the personal estate devolved upon the administrator, the equitable or beneficial title vested in the surviving husband and child immediately on the death of Mrs. Anderson: Walworth v. Abel, 2 P. F. Smith 370.

"That Mr. Anderson could not gather the ripened fruit of his contract of insurance, was no reason why he should be deprived of his right to a share in the policy under the intestate laws. It might as well be said that he could not inherit a century plant because there could by no possibility be a flower during his life. Whatever has a present value will pass under the intestate law. Mr. Anderson's ownership of the policy was absolute and unqualified. The policy had not 'been sold or disposed of by will, or otherwise limited by marriage settlement.' It was personal estate; had an ascertained or ascertainable value, and was capable of assignment or

bequest when Mr. Anderson died: Elliott's Appeal, *supra*; Act of March 14th 1873, sect. 1, Purd. Dig. 1799; Act of April 4th 1373, sect. 5, Purd. Dig. 1795; Purefoy *v.* Rogers *et al.*, 2 Saund. 388, note; 4 Kent 262; Cunningham *v.* Smith, 20 P. F. Smith 450. It was therefore a proper subject of succession. There was no express exclusion of Mr. Anderson, in the terms of the policy, from the right of succession. He could not be excluded by implication. The policy provides no new mode of distribution; the distribution must therefore be made 'pursuant to law.' The presumption must always be in favor of the legal rule of succession, and those claiming otherwise must show that they have a written, or what is equivalent to a written, title from the decedent to themselves: Faries's Appeal, 11 Harris 29; Whichcote *v.* Lyle, 4 Casey 73; Dubs *v.* Dubs, 7 Id. 154. Mr. Anderson having survived his wife, the statute gave him a prima facie right to share in her personal estate.

There can be no doubt but that if Mr. Anderson had taken out a policy on his life expressed to be for his own benefit, although payable at his death, it would have been valid, and that he could have assigned or bequeathed it: Elliott's Appeal, *supra*. There would seem to be as little doubt that Mrs. Anderson could have exercised the same power over her policy in her lifetime and that a valid title thereto could subsequently have vested in Mr. Anderson. The same reasons exist for holding that Mr. Anderson took an interest under the intestate laws in the latter policy on the death of his wife. That which may be acquired by assignment or will, may pass under the intestate law.

"The evidence which was offered at the hearing in this matter to show a waiver or relinquishment on the part of Mr. Anderson of his interest in this policy was clearly insufficient for that purpose. It was nothing more than a declaration of intention, which would not have been binding on him, and was not effective to convey his title: Trough's Estate, 25 P. F. Smith 115; Bliss on Life Ins. 339. Trough's Estate was a much stronger case than this. There a father wrote an assignment on the back of a policy of insurance on his own life, to one in trust for his children, placed it in his safe and continued to pay the premiums until his death. It was held that the gift was not complete, and that the proceeds went into his general estate, notwithstanding the manifest *intention* of the insured to the contrary.

"The Act of April 15th 1868, Pamph. L. 103, has no application to the present case.

"In 1865 it was held, Elliott's Appeal, *supra*, that an assignment made by a husband of policies of insurance on his own life to his wife was fraudulent and void as against the creditors of the husband who were such at the time of the assignment. Then followed the Act of 1868, which declared that policies of life insurance and

[Anderson's Estate.]

annuities taken out for the benefit of, or bona fide assigned to, the wife, *or* children, *or* dependent relatives of the person insured, should be vested in them free and clear from all claims of the creditors of such person insured. The *mischief* which was intended to be cured was the insecurity of property in life insurance policies and annuities held by the donees named in the act, respectively, by reason of the claims of the creditors of the donors. The *remedy* provided was not the exclusion of the rights of the *donor* under the intestate laws, but exemption from all claims of the *creditors* of the donor. Nothing is said with reference to rights of inheritance or succession. No intention is manifested to change or interfere with the intestate laws. The act provides no new mode of distribution. The plain and obvious reasoning of the words used limited the operation of the act to the protection of the property of the beneficiaries from the attack of the creditors of the party insured. *A verbis legis non est recedendum* : Bradbury *v.* Wagenhorst, 4 P. F. Smith 182 ; Lee *v.* Forman, 3 Metc. 114 ; McAfee *v.* Railroad, 36 Miss. 669. It was thought necessary in a subsequent statute (Act May 1st 1876, § 25, Pamph. L. 60), to introduce an express provision excluding the husband from participation in policies of insurance on his own life, held by his wife and issued under the provision of that act. This was an intimation that the two acts were to have a different meaning : Rich *v.* Keyser, 4 P. F. Smith 86.

" If then the object of the Act of 1868 was the protection of a certain class of interests, it would seem to follow that that protection could be invoked no longer than the interest came within the purview of the act. When the interest ceased the protection would necessarily end. It is not denied in the present proceeding that Mrs. Anderson was, in her lifetime and at her death, the sole owner of this policy. She was, therefore, the only one who was entitled to the protection of the Act of 1868. When she died her interest in the policy passed, under the intestate laws, to other parties, and there was no more reason for the continuance of the protection of the statute than if she had assigned the policy in her lifetime. So long as the property continued to be vested in her, it was under the protection of the statute but no longer.

" The policy was not taken out for the benefit of or bona fide assigned to Miss Grace Anderson. The testimony shows that an entirely independent, but similar provision was made for her in the lifetime of her mother ; but she was not mentioned by name, nor described in the policy in evidence here. Mrs. Anderson was the sole and absolute owner and, had she survived her husband, would have had the complete disposition of the proceeds in her power. She could have shared with her daughter or with a stranger. In any event Miss Anderson would not, in all probability, have gotten more than half the proceeds and that as a mere gratuity. The only *right* which she ever had in this policy or its proceeds, she derived

[Anderson's Estate.]

under the intestate laws on the death of her mother. Her interest in the policy is not such as would be subject to the claims of the creditors of the 'person insured.' She is therefore not such a party as can claim the protection of the benefit of the Act of 1868.

"Nor has Miss Anderson any equity as against her father's creditors. The record does not show when Mr. Anderson became insolvent; but it is fair to presume that his failure was gradual and this policy was kept alive, latterly, with the money of his creditors. His creditors, therefore, have a just claim to part of the proceeds of the policy. It is better to be just than generous.

"These considerations lead to the conclusion that the fund in the hands of the accountant should be divided amongst the representatives of W. J. Anderson, deceased, and Miss Grace Anderson, 'share and share alike.'"

From this decree both parties appealed.

*John H. Bailey* and *Malcolm Hay*, p. p., for the administrator.—The proceeds of the policy were not Mrs. Anderson's at the time of her death, and did not become payable until two and a-half years thereafter. They did not become assets of her estate afterwards, for the account shows there were no assets to keep the policy alive, and if there had been the administrator could not have lawfully used them to pay subsequent premiums, or, if he could, he did not, nor could he compel Anderson to pay them. The subsequent voluntary payments of William J. Anderson could not make the fund assets, nor could the mere acceptance of the fund by the administrator make it such. Anderson owed no duty to his wife's estate, and could have permitted the policy to lapse. The Statute of Connecticut, which it is argued governs this policy, was not proved, and it was enacted subsequently to the issue of the policy, and was not designed to affect the contract therein. The policy is a Pennsylvania and not a Connecticut contract, for it expressly provides that it shall not be binding unless countersigned by a Pennsylvania agent, and is subject to the provisions of our statutes regulating foreign insurance companies.

Deginther's Appeal, 2 Norris 337, rules this case. As there said, "as soon as it is settled that the insurance money is part of the personal estate of the wife, it is to be considered, for all the purposes of distribution, to have been hers at the time of her death and her next of kin, then entitled, and those lawfully claiming under them would be the distributees."

*John M. Kennedy* and *George P. Hamilton*, for guardian.— Deginther's Appeal, *supra*, differs substantially from this case. If the 14th and 15th sections of Act of 9th April 1850, incorporating the American Life and Health Company, had been considered as applicable to the policy issued by that company to John

[Anderson's Estate.]

Haas, but payable to his widow, Deginther's Appeal would doubtless have been decided differently.

There is another radical difference between the two cases. It does not appear from Deginther's Appeal, *supra*, that the insured died insolvent, or that the whole proceeds of the policy would not go indirectly, through the executor of the husband, to his wife and children. William J. Anderson died insolvent. The administrator of his estate is also administrator of his wife's estate. He is trustee primarily for creditors and secondarily for the next of kin.

The Act of 15th of April 1868, provides as follows: " All policies of life insurance, or annuities upon the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children of any relative dependant upon such person, shall vest in the wife or children or other relatives, free and clear from all claims of the creditors of such person."

Admitting for the sake of the argument that the administrator of Mr. Anderson was entitled to half the fund, he would not hold it as trustee for creditors, but as trustee for the next of kin. Could he in the distribution of the fund give the whole or any part of it to the creditors in exclusion of the child and heir? If he was trustee, in respect to this fund, for Grace Anderson, the court in making distribution, should have awarded it directly to the guardian. There would be no propriety in awarding it to the administrator to be by him paid over to the guardian.

The judgment of the Supreme Court was entered October 15th 1877,

PER CURIAM.—This case has been so fully discussed by the learned judge of the Orphans' Court, it is unnecessary to discuss it at large again. We think the distribution made by him was proper.

Decree affirmed, with costs of the appeal in each case to be paid by the appellants, and the appeals dismissed.