### FRICK et al. v. LEWELLYN.

(District Court, W. D. Pennsylvania. June 5, 1924.)

#### No. 2831.

1. Internal revenue ⟨⟩8—Revenue Act held to authorize imposition of transfer tax on proceeds of insurance policies constituting no part of decedent's estate.

Revenue Act 1918, § 402 (f), being Comp. St. Ann. Supp. 1919, § 6336¾c), including in the gross estate of a decedent, from which the net estate subject to tax under section 401 (Comp. St. Ann. Supp. 1919, § 6336¾b) is to be determined, insurance receivable by beneficiaries under policies taken out by decedent on his own life in excess of specified amount, *held*, in view of sections 408, 409 (Comp. St. Ann. Supp. 1919, §§ 6336¾i, 6336¾j), to provide for a tax on property which forms no part of decedent's estate, is not collectable by executors, and was not transferred by decedent in contemplation of death.

2. Insurance ⟨⟩124—Insurance policies property.

Insurance policies are property.

3. Insurance ⟨⟩586—Beneficiary named in policy, without reservation of right to change beneficiary, acquires vested right.

Beneficiary named in policy, without reservation of right to change beneficiary, acquires vested right.

4. Insurance ⟨⟩213—Assignees of policy, without reservation of right to revoke assignment, acquire vested right.

Assignees of life policies, without reservation in assignment or policies of right to revoke assignment, acquire vested right.

5. Insurance ⟨⟩213—Assignment of policies, with right to revoke assignments, gave assignees vested right subject to divestiture.

Assignments of life policies, with right to revoke assignments, gave assignees vested rights immediately on assignment, subject to divestiture.

6. Constitutional law ⟨⟩286—Internal revenue ⟨⟩2—Statute providing for transfer tax on proceeds of policies not constituting part of decedent's estate, collectable by personal representative, or assigned in contemplation of death, held unconstitutional.

Revenue Act 1918, §§ 401, 402 (Comp. St. Ann. Supp. 1919, §§ 6336¾b, 6336¾c), imposing a tax on the transfer of the net estate of decedent, and including proceeds of life policies not constituting a part of decedent's estate, nor collectable by his personal representative, nor due under assignments made in contemplation of death, as a part of the gross estate, *held* to provide for the taking of property without due process of law, and for

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the levy of a direct tax without apportionment, as required by the Constitution, in so far as it provides for a tax on such proceeds.

7. **Internal revenue ⚘8—Tax imposed under Revenue Act 1918 held tax on transfer, as distinguished from tax on property.**

Transfer tax, imposed on decedent's net estate under Revenue Act 1918, §§ 401, 402 (Comp. St. Ann. Supp. 1919, §§ 6336¾b, 6336¾c), *held* tax on the transfer of the net estate and excise on its passing as the result of death, as distinguished from a tax on the property itself.

8. **Internal revenue ⚘8—"Estate excise taxes," "legacy taxes," and "inheritance taxes" distinguished.**

"Estate excise taxes" are based on the power to transmit or the transmission from the dead to the living, while "legacy taxes," or "inheritance taxes," are based on the transmission or right to receive the property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inheritance Tax; Second Series, Legacy Tax.]

At Law. Action by Adelaide H. C. Frick and others, executors of the last will of Henry C. Frick, deceased, and others, against C. G. Lewellyn, formerly Collector of United States Internal Revenue for the Twenty-Third District of the State of Pennsylvania. Judgment for plaintiffs.

George B. Gordon, of Pittsburgh, Pa., for plaintiffs.
Walter Lyon, U. S. Atty., of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. The executors of the will of Henry C. Frick have brought this action against the collector of internal revenue for the Twenty-Third District of Pennsylvania to recover the sum of $108,657.38, alleged to have been erroneously assessed and collected under the provisions of section 402 (f) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336¾c). The case was tried without a jury, on an agreed statement of facts, and the facts so stipulated are adopted as the court's findings of fact, as fully as if set forth in this opinion.

At the time of testator's death there were outstanding 11 policies of insurance upon his life, 4 of which were payable to his wife, and 7 to his daughter. The aggregate amount of these policies, which was payable to and received by the respective beneficiaries, was $474,629.52. This amount, less $40,000, was included in the gross estate of the decedent, which exceeding $10,000,000 in amount, exclusive of the insurance, the tax rate of 25 per cent. became applicable under the statute, and the additional tax assessed to the estate on account of this insurance was $108,657.38, the amount sought to be recovered here. The policies in question were taken out by the decedent at various times, the first in 1874, and the last in 1901, their issuance in this way varying in time from 18 to 44 years before his death.

The policies were of different classes. Some were made payable to Mr. Frick's estate, with no provision for change of beneficiaries, but were subsequently assigned to his wife and daughter, without reservation of power to revoke the assignment. Some were of like character, and were so assigned, with power reserved to revoke the assignment. Some were made payable to Mr. Frick's executors, and subsequently, by arrangement with the company, were made payable to his daughter as beneficiary, without power reserved further to change the

beneficiary. In others, the wife and the daughter were named as beneficiaries; the policies containing no power which enabled the insured to change the beneficiary. All the premiums were paid by Mr. Frick, and none of the assignments of the policies so made by him were at any time revoked. The decedent died testate on December 2, 1919; the will providing:

"That all inheritance, legacy, succession or similar duties or taxes * * * shall be paid out of the capital of my residuary estate."

The tax was levied under title 4 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, §§ 6336¾a–6336¾k), which went into effect on February 24, 1919. The parts of the act material in the determination of this question are as follows:

In section 401 (Comp. St. Ann. Supp. 1919, § 6336¾b):

"A tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States:
"1 per centum of the amount of the net estate not in excess of $50,000;
"[Here follow the graduated rates and amounts from $50,000 up to $10,-000,000];
"25 per centum of the amount by which the net estate exceeds $10,000,000."

In section 402 (Comp. St. Ann. Supp. 1919, § 6336¾c):

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;
"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy;
"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;
"(d) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent;
"(e) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth; and
"(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

In section 408 (Comp. St. Ann. Supp. 1919, § 6336¾i):

"If any part of the gross estate consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate. If there is more than one such beneficiary, the executor shall be entitled to recover from such beneficiaries in the same ratio."

Aside from the provision of the will for the payment of the taxes from the residuary estate, and assuming the act valid, and giving to it the interpretation claimed for it by the government, of the total sum of $108,657.38, 89 per cent. thereof would fall on the beneficiaries of the policies, and 11 per cent. on Mr. Frick's estate. In other words, the act undertakes to impose a transfer tax, ascertained by including in the gross estate the amounts which the executors never received, and were not entitled to receive, but which were received by his wife and daughter as insurance upon his life. This tax, by whatever name designated, is a graduated tax, and levied, not upon the value of that which the beneficiaries received, which under the act would have been two per cent., but upon the value of the decedent's total estate, which, as it exceeded $10,000,000, fixed the tax at 25 per cent.

The plaintiffs claim that the tax thus imposed is invalid, and the decision of this question involves the proper construction of the act and the question of its constitutionality. As to the construction of the act:

It is perfectly clear that the taxes in question, under section 401, are imposed upon the value of the net estate of the decedent, and their amount equals the sum of certain percentages of the value of such net estate, varying from 1 per cent., when the amount of the net estate is not in excess of $50,000, to 25 per cent. of the amount by which the net estate exceeds $10,000,000. The value of this net estate is determined in section 403 (Comp. St. Ann. Supp. 1919, § 6336¾d); that is, by deducting from the value of the gross estate certain amounts therein designated and specified. The value of the gross estate is determined in section 402; that is, by including the value, at the time of the death, of all property, real or personal, tangible or intangible, wherever situated, to the extent of the interest and property specified in paragraphs (a) to (f), inclusive. Paragraph (a) refers to such interest of the decedent at the time of his death in any property which is subject to the payment of charges and expenses of administration, against his estate, and is subject to distribution as part of his estate; paragraph (b) refers to the inchoate interest of the surviving spouse in any property which becomes complete on the death; paragraph (c) refers to property transferred or trust created in contemplation of death; paragraph (d) to decedent's interest in lands held jointly; paragraph (e) to property passing by will under a general power of appointment, or by deed in contemplation of death; the first part of paragraph (f) refers to insurance policies receivable by the executor, and then comes the provision in said paragraph under which the tax in question is levied, namely:

"And to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

[1] If these words are given their ordinary meaning and significance, Congress did intend to include in the gross estate life insurance policies which, at the time of death, formed no part of the decedent's estate, and which the executors had no right to collect. This meaning or interpretation of the act is strengthened on an examination of section 408, which provides that, if any part of the gross estate consists of proceeds of policies receivable by a beneficiary other than the executor, the latter may recover from the beneficiary such portion of the total tax paid as the proceeds in excess of $40,000 of such policies bears to the net estate. In that specific case, provision is made for the recoupment of the executor of the taxes which should have been paid by the designated beneficiaries. This provision does not relate to any other of the property designated in the several paragraphs of section 402. On the other hand, it is provided in the same section that if the tax, or any part of it, is paid by, or collected out of, that part of the estate passing to, or in possession of, any person other than the executor, in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed, or by a just contribution by those whose interests in decedent's estate would have been reduced if the tax had been paid before distribution of the estate; the purpose of this provision being, as in said section is expressed, that so far as practicable, and unless otherwise directed by the will, the tax shall be paid out of the estate before distribution.

In short, the beneficiaries of policies on the life of the decedent, other than the executor, are made the ultimate paymasters of the taxes imposed on such policies. This is made clear, beyond question, in section 409 (Comp. St. Ann. Supp. 1919, § 6336¾j), which provides that, if decedent makes a transfer or creates a trust with respect to any property, intended to take effect in possession or enjoyment at or after his death, or if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and in either case if the tax in respect thereto is not paid when due, a transferee, trustee, or beneficiary is made personally liable for the tax, and such property, to the extent of the decedent's interest therein at the time of the transfer, or to the extent of such beneficiary's interest under the contract of insurance, shall be subject to a lien equal to the amount of such tax.

If this is the fair and proper meaning to be taken from the provisions of the act, when considered together, we reach the question as to the legality of the tax so imposed. None of the policies passed from the decedent's estate by will, descent, or distribution; nor can it be held that any of the policies were transferred in contemplation of death within the meaning of paragraph (c) of section 402, as all transfers occurred more than two years before the decedent's death. If a transfer without consideration, within the period of two years, is deemed to be in contemplation of death, unless the contrary be shown, it would seem that a transfer prior to that time would be presumed not to have been so made, and there is nothing before the court to overthrow this presumption as to transfers of any of the policies in question.

If it be true that the policies in question, on the death of decedent, did not pass from decedent's estate by will, descent, or distribution, and

that no transfer of them was made in contemplation of death, within the meaning of the act, they would not be subject to a tax imposed, either directly or indirectly, upon the transfer of the net estate of the decedent. Congress could impose a tax on such property, but not under the guise of an excise tax. The Supreme Court, in Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, and in other cases, has with painstaking effort pointed out, and elaborated with great clearness, the line of distinction which separates death duties, by whatever mode assessed, or by whatever name designated, whether probate duties, stamp duties, legacy taxes, or estate taxes, and those taxes which are imposed on property as such, because of its ownership and possession. The former may be exacted on the passing of property by will or descent as the result of death, as distinguished from a tax on the property itself. In other words, the estate duty is not on the interest to which some one succeeds on the death, but the interest which ceased by reason of the death. And so have legacy and inheritance taxes been sustained, not as a tax on the property itself, but upon its transmission; this, because the right to take by devise or descent is a legal and not a natural right, and the authority which confers it may impose conditions upon it. While the right to regulate successions is vested in the states alone, Congress has the power to levy taxes on the transmission or receipt of property, which is something apart from the right to regulate its transmission.

[2] The amount of the net estate here made taxable under the act was increased by the total amount of the policies involved, with the result that the amount of the tax in dispute was imposed upon, and arose solely from, the value of these policies included as a part of decedent's net estate. We must therefore inquire on what theory were they so included as a part of the estate. Insurance policies are property. Their legal status has been well established by numerous authorities. In the case of Tyler v. Treasurer and Receiver General, 226 Mass. 306, 115 N. E. 300, L. R. A. 1917D, 633, the Supreme Judicial Court of Massachusetts, in considering the question of the right to impose a tax on money paid to the beneficiary under an insurance policy, considered exhaustively, and laid down with clearness, the scope and character of insurance policies and the rights of beneficiaries thereunder. In substance, the court held that a policy of insurance is a contract, and that the rules which are applicable to contracts govern their interpretation and enforcement; that the rights of the beneficiary attach at once, when designated as such in the policy, and are protected both by common law and statute; that, where the beneficiary is the wife, her rights instantly vest upon a meritorious consideration; that it is the general rule that a policy and the money to become due under it, the moment it is issued, accrue to the person mentioned as beneficiary; that, when the designation is made, his right is vested, taking complete effect as of that time, being in no wise modified or increased at the time of the death of the insured; that such contracts are usually for the benefit of some defendant, and the insured retains no ownership of that which has passed to his beneficiary under the contract; and that so long as they last the nature of the beneficiary's rights is not affected by a right reserved to · change the beneficiary. If his designation be considered a gift, it is a

present one, taking immediate effect, both in possession and enjoyment by the beneficiary. To the amount due on the policy the insured has no title, the right to such amount does not spring into existence until after his death, and even then the money belongs to the insurer, who is charged with the duty under the contract to pay to the beneficiary.

The courts of Pennsylvania have taken the same legal view of insurance policies, both under the common law and the statutes of the state. Anderson's Estate, 85 Pa. 202; Elliott's Appeal, 50 Pa. 75, 88 Am. Dec. 525. If there were any question of the legal status of policies under the common law of Pennsylvania, there can be no doubt under the Pennsylvania statutes. By the act of 1868 (P. L. 103):

"All policies of life insurance or annuities upon the life of any person which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children or any relative dependent on such person, shall be vested in such wife or children or other relative, full and clear from all claims of the creditors of such person."

. By the act of 1873 (P. L. 46; Pa. St. § 12388) assignees of insurance policies are authorized to bring suit in their own names. By the act of May 5, 1915 (P. L. 253), the rights of the wife and children under the act of 1868 were made more certain by the use of the words:

"Notwithstanding the right to change the beneficiary named has been reserved by the insured or is permitted by the insurer."

Even before these latter acts were passed, the Supreme Court of the state, in Entwistle v. Travelers' Insurance Co., 202 Pa. 141, 51 Atl. 759, held that the interests of a wife and children on a policy taken out by the husband on his life and payable to them as beneficiaries were vested interests, which the insured had no power to disturb. In that case the policy was payable to the wife if she survived her husband, or, in the event of her prior death, to the children, but, if the insured survived the wife and children, then to his legal representatives. In the policy was a clause that it might be converted into cash at the option of the holder at the expiration of 15 years. The husband and wife assigned the policy, and at the end of 15 years the assignee attempted to exercise the option and take the money. The Supreme Court held that neither husband nor wife, nor both together, had power to destroy the vested interest of the children, and no right to exercise the option existed in the assignee.

In Parsons' Estate, 117 App. Div. 321, 102 N. Y. Supp. 168, the policy was assigned to the wife, the insured having the right to change the beneficiary. It was held that the policy could not be taxed as a part of the insured's estate, that the wife obtained an immediate title right to enjoy the moneys when they became payable, and that this was so, although her title might be defeated by a change of beneficiary, or her own death during the lifetime of the insured. To the same effect is Lloyd v. Royal Union Mutual Life Ins. Co. (D. C.) 245 Fed. 162.

In Central Nat. Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370, Chief Justice Fuller, speaking for the court, said:

"It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the per-

son procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named" (citing a large number of cases in different states).

As the policy in that case was issued in Connecticut, the court held that the rights and benefits given by the laws of that state were as much a part of the contract as if incorporated therein, not only because the contract was made there, but was to be performed there, and the parties stipulated with reference to the laws of that state.

[3-5] It is not debatable, therefore, that those policies in this case which named Mrs. Frick as beneficiary, with no power reserved to change the beneficiary, vested in her absolutely. It is scarcely less clear that those policies made payable to the personal representatives of the insured, but which were afterwards assigned by him, in his lifetime, without reservation in the assignment or policies to revoke the assignment, vested absolutely in his wife and daughter. Nor do I doubt that in those policies which contained no provision on the subject, but in which Mr. Frick by agreement with the company substituted his daughter as beneficiary, reserving no right to further change the beneficiary, the daughter's rights became vested at once. And, finally, I am of opinion that in the three policies in which the assured reserved a right to revoke the assignments to his wife and daughter, but never did so, the rights of the assignees were vested and absolute; that those rights vested immediately under the assignment, subject to a limitation, not a conditional estate, vesting at the time of death, but an estate which vested at once, subject to be divested by the happening of an uncertain future event. As that event did not occur, there was no divestiture.

[6-8] Under these facts, the policies being the property of others than the decedent, upon what legal basis does the imposition of these taxes rest? It is defendant's contention that the property itself is not taxed; that the tax is an excise on the right to transmit property at death; that the inclusion of nontaxable property in the measure of the tax does not make the act unconstitutional, if the measure of the excise be reasonable, and that it is reasonable to measure such tax by including the value of any property of which the decedent has made testamentary disposition; that the purchase of a policy of insurance on one's life is a testamentary disposition, and therefore the act is valid. The answer to this position is that the act undertakes to impose the tax upon the transfer of the net estate of the decedent, an excise on its passing as the result of death, as distinguished from a tax on the property itself. Here there is no transfer at death, no passing of the property, upon whose value the percentages of taxation are based. Neither can it be said, as contended by defendant in its supplemental brief, that if the taxes imposed by section 401 and 402 (f) cease to be an estate tax by reason of the effect of sections 408 and 409, it is transferred, not into a direct tax, but into an excise on the right of the beneficiaries to receive the insurance; this because estate taxes and what are known as legacy or inheritance taxes are of the same character, death being the source from which the taxing power arises.

Estate excise taxes are based on the power to transmit or the transmission from the dead to the living, while legacy or inheritance taxes

are based on the transmission or the right to receive the property in question. Here the right of the beneficiaries to receive the insurance did not spring from the death of the testator. Their rights arose under contracts of insurance. The date of death is simply the time when the insurers became obligated to pay, and the beneficiaries entitled to receive, the proceeds of the policies under their contract. What Congress did under section 402 (f) was to impose a tax upon property, not an excise tax upon the happening of an event. In Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108, the tax upon income derived from real estate and from personal property was held to be in effect a tax upon real and and personal property. Here the statute arbitrarily makes something a part of the Frick estate which in fact was no part of it, and upon the value of that undertakes to levy an estate tax, an ad valorem transfer excise tax, amounting to 25 per cent. of the value. This, in my judgment, is the taking of property without due process of law—the levying of a direct tax without apportionment, as required by the Constitution.

It is difficult to understand on what hypothesis this tax can be held valid. It would appear to be an attempt to impose a tax on the amounts received by the beneficiaries under the policies, and to compel the executors to become the collectors of the tax, although such amounts constituted no part of the estate, and were not received by, nor in any manner under the control of, the executors. Gross inequities and unjust discriminations would inevitably result from such a method of imposing taxes. Should the tax exceed the value of the property, the possessor would be given no right to surrender it to the taxing power in lieu of payment. The estate would not be protected by the provision for recoupment; such right of action could never be the equivalent of immunity from taxes, even if an action would lie, by the executors, for the full amount paid, because of the uncertainties of enforcing judgment. Conspicuously is this true in the act under consideration, because it imposes a liability on the executors for the full amount of the taxes, and at the same time only enables them by action to recover a part. Not only so, but the amount of the tax depends, not upon the value of the policies, or the total amount of all the policies, but upon the amount of the dead man's estate, plus the value of the policies.

In Knowlton v. Moore, supra, which involved the interpretation of the War Revenue Act of 1898 (30 Stat. 448), where taxes had been collected on certain legacies and distributive shares, the rate being fixed, not on the amount coming to each individual, but on the whole personal estate, Chief Justice White condemned such method in these words:

"But this is equivalent to saying that the principle underlying the asserted interpretation is that the house of A, which is only worth $1,000, may be taxed, but that the rate of the tax is to be determined by attributing to A.'s house the value of B.'s house, which may be worth a hundredfold the amount. The gross inequalities which must inevitably result from the admission of this theory are readily illustrated."

In the same spirit and with the same thought in mind, in Hartman v. Greenhow, 102 U. S. 672, 26 L. Ed. 271, which involved the validity of a statute requiring a tax on bonds to be deducted from coupons, which were detached and held by different owners, Mr. Justice Field said:

"Surely it is not necessary to argue that an act which requires the holder of one contract to pay the taxes levied upon another contract held by a stranger cannot be sustained. Such an act is not a legitimate exercise of the taxing power; it undertakes to impose upon one the burden which should fall, if at all, upon another."

In obedience to the authorities and the principles of law as I understand them, I am constrained to hold that the imposition and collection from the plaintiffs of $108,657.38, the amount of the tax in question, was without authority of law and in violation of the plaintiffs' constitutional rights, and that judgment for that amount should be entered for the plaintiffs, with interest and costs; and it is accordingly so ordered.