## Buechley's Estate

*T. A. McCarthy*, for accountant.

GANGLOFF, P. J., March 2, 1936.—Upon the death of William Buechley, Jr., in October 1935, the Union Central Life Insurance Company paid to Frank S. Buechley, administrator of the estate of Letitia S. Buechley, deceased wife of William Buechley, Jr., deceased, the sum of $14,508.79, representing the proceeds of two life insurance policies issued by that company to William Buechley, Jr., as the insured, in each of which the beneficiary was identical, namely, "Letitia S. Buechley, his wife, her administrators, executors or assigns." Letitia S. Buechley, the wife of the insured and the beneficiary named in the policies, died intestate on March 1, 1934, and letters of administration upon her estate were duly granted to the accountant.

Each of the two policies has a clause reserving to the insured "the right at any time to change the beneficiary, by written notice to the company at the home office, for which a form will be furnished on request". Although the named beneficiary died before the insured, the latter did not exercise the right reserved to him to change the beneficiary. Under the circumstances the company paid

the proceeds of both policies to the administrator of the deceased beneficiary.

No one questions the right of the insurance company to pay the proceeds of the policies to the administrator of the estate of the deceased beneficiary. Indeed, the insured, in the exercise of a right given to him under the contract, designated as beneficiary his wife, "her administrators, executors or assigns".

As above indicated, although the insured survived the named beneficiary he did not exercise the right reserved to him under the contract to change the beneficiary. On the contrary he continued to pay the premiums and thus kept the policies in force.

Where a policy of life insurance reserves to the insured the unrestricted right to change the beneficiary, the beneficiary has no vested right to the insurance at maturity but only an expectancy of benefit; and where such policy is delivered to the beneficiary with instructions merely to take care of the insured, if necessary, the rights of the beneficiary are not enlarged nor is a gift created: Riley v. Wirth, 313 Pa. 362. Where the right to change the beneficiary has been reserved in a life insurance policy, the beneficiary named has but a mere expectancy with no vested right or interest during the lifetime of the insured: Knoche, Admr., v. Mutual Life Ins. Co. of N. Y., 317 Pa. 370. The proceeds of the policy are funds that exist only at and after death, created through the happening of the insurance hazard: Irving Bank v. Alexander et al., 280 Pa. 466.

In the case at bar it is evident that the proceeds of the policies were payable to the wife of the insured, if she survived him and if he did not change the beneficiary, but if she did not survive and there was no change made in the beneficiary the proceeds were payable to her administrators, executors or assigns: her administrator in this case. The insured did not make any change in the beneficiary and, therefore, what was merely an expect-

ancy during his life became a vested right or interest upon his death: Weil v. Marquis, 256 Pa. 608.

The leading case upon this question of ownership of the proceeds of insurance policies is Deginther's Appeal, 83 Pa. 337, in which Christianna Haas took out a policy of insurance on the life of her husband, John Haas, which was made payable to her, her executors, administrators, and assigns. She died intestate during the life of her husband, leaving two children. Mr. Justice Sharswood, in delivering the opinion of the court, said (p. 339):

"The contention of the appellee is, that as John Haas, the husband, survived his wife, the estate vested in the administrator of Christianna, at the moment of his death, and that having then ceased to exist, he could have had no claim upon Christianna's estate which could pass to his personal representative. The argument appears to be too refined. If it be a sound universal position, that a man's representatives are not entitled to anything not *vested* in him at the time of his death, though coming to his estate on the happening of a subsequent contingency, neither could Christianna's representatives be entitled, under this construction of the law, for she was not possessed of this property at the time of her death. . . . It is not and cannot be pretended that if this insurance for the benefit of Christianna had been upon the life of a third person, and John Haas had been living when the life fell, he would not have been entitled as a distributee. Ought it to make any difference that the insurance was upon his own life? . . . If Christianna had died leaving no children or they had died without leaving descendants —in which case the husband would have been entitled to the whole estate—must it have gone in this event which has happened to her collateral next of kin? We are of opinion, that as soon as it is settled that the insurance money is part of the personal estate of Christianna, it is to be considered, for all the purposes of distribution, to

have been hers at the time of her death, and her next of kin, then entitled and those lawfully claiming under them, would be the distributees. At that time John Haas was living and was entitled to one-third of her estate under the Act of 1848. It is not stretching the construction of the statute beyond what is legitimate to hold that her estate includes for purposes of distribution, not only what was then her estate, but what might have become so, on contingencies happening afterwards."

See also Anderson's Estate, 85 Pa. 202; The U. B. Mutual Aid Society v. Miller, Admr., 107 Pa. 162; Ogilvie's Estate, 291 Pa. 326; Schultz's Estate, 96 Pa. Superior Ct. 514.

The fund, therefore, passes, through the administrator of the deceased named beneficiary, to her heirs at law under the intestate laws. Decedent left to survive as her heirs at law her husband, William Buechley, Jr., whose estate is entitled to one third of the fund for distribution, and the following children, each of whom is entitled to one sixth of said fund, namely, Lulu B. Miller, Ruth B. Faulkner, Frank S. Buechley, and William Buechley. Distribution will be decreed accordingly.

The account shows a balance in the hands of accountant amounting to $13,359.35, against which there is the claim of the Commonwealth of Pennsylvania for transfer inheritance tax at the rate of two percent upon the gross estate of $14,508.79. The tax, if payable at all, would be upon the net estate after deducting expenses of administration. Decedent's debts appear to have been paid out of other portions of her estate not here accounted for.

The imposition of a transfer inheritance tax is governed by the provisions of the Act of June 20, 1919, P. L. 521, sec. 1, as amended, the last amendment being the Act of June 22, 1931, P. L. 690. The applicable provisions of the act are as follows:

"That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any in-

terest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases:

"(a) When the transfer is by will or by the intestate laws of this Commonwealth from any person dying seized or possessed of the property while a resident of the Commonwealth, whether the property be situated within this Commonwealth or elsewhere. . . .

"(d) . . . The proceeds of policies of life insurance, payable otherwise than to the estate of the insured, and whether paid directly by the insurer to beneficiaries designated in the policies, or to a trustee designated therein, and held, managed, and distributed by such trustee to or for the benefit of such persons or classes of persons under such plan and in such estates as may have been prescribed by the insured under agreement with such trustee, shall not be included in imposing any tax under this section".

It is plainly evident that the proceeds of the policies were made "payable otherwise than to the estate of the insured" and, therefore, under the express terms of the act, are exempt from the transfer inheritance tax: Murphy's Estate, 21 Pa. Superior Ct. 384, 385. But the Commonwealth does not claim against the estate of William Buechley, deceased, the insured; its claim is against the estate of Letitia S. Buechley, the deceased beneficiary. The Commonwealth can claim only by virtue of the terms of the act.

The tax is on the transfer of the property on the owner's death and not a tax on the property itself: Frick's Estate, 277 Pa. 242; Frick et al. v. Pennsylvania, 268 U. S. 473. The thing taxed is the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought is to levy a toll against the passing of property of citizens going by reason of death to others, in whatever light the taking may be viewed: Shugars et al. v. Chamberlain Amusements En-

terprises, Inc., 284 Pa. 200, 205. And the transfer, as applied to the case at bar, must be by will or by the intestate laws "from" a person "dying seized or possessed of the property". The act itself specifically so states.

Did Letitia S. Buechley, the decedent, die seized or possessed of the fund in question, and did the fund pass "from" her? We have not been able to find any cases in which the precise question has been presented to our courts but there are a number of decisions dealing with cognate questions which point the way to its solution.

Seisin or possession, as used in the transfer inheritance tax acts, means the right to demand and recover the immediate possession: Swann's Estate, 1 Dist. R. 579; Matthiessen's Estate, 17 Dist. R. 201; Gebhard's Estate, 20 Dist. R. 529; Commonwealth v. Thomas et al., 21 Dist. R. 350; or, as defined by Webster's New International Dictionary (1933 ed.), the act, fact or condition of a person's having such control of property that he may legally enjoy it to the exclusion of all others having no better right than himself.

Letitia S. Buechley was never in actual fact seized or possessed of the proceeds of the policies. Up to the moment of her death her right to the proceeds was contingent, or, as stated above, a mere expectancy of interest. The insured had the unrestricted right to change the beneficiary at any time. That right was superior to the right of his wife to the proceeds. The right thus retained by the insured remained with him until the time of his death, over a year after her death.

In Hitner v. Ege, 23 Pa. 305, the wife having died during the lifetime of her mother, the widow of the intestate, her husband had no estate by curtesy in the third to which the widow was entitled during life; and on the death of the latter such third part descended to the heirs of the intestate unencumbered by any claim on the part of the husband or his creditors. Here the wife had an estate in remainder, but the right of actual possession did not exist during the lifetime of her mother. Upon

the death of the mother, the heir of the deceased wife took through her, not from her. To the same effect is Commonwealth v. Naile, 88 Pa. 429.

In the latter case the words "dying seized and possessed" are construed.

In Swann's Estate, supra, the Commonwealth claimed collateral inheritance tax. In that case Esther Stewart gave her estate by will in trust as to one half for her sister, Margaret Bell, for life, and after her death for the sole and separate use of her daughter, Maria E. Swann, for life; and in further trust, at her death, for the children of the said Maria, and in default of children, for testatrix's sister, Maria Smith; but if, at the death of Maria E. Swann without issue, said Maria Smith should also be dead, then to the right heirs of said Esther Stewart. Margaret Bell died in 1854, leaving an only child, Maria E. Swann. The latter survived Mrs. Smith and died testate and without issue in 1891. The court found that the right heir of Esther Stewart was Margaret Bell and that Maria E. Swann, as her only child, succeeded to the rights of the mother in the property and could dispose of it by will. The court also held that the property so passing to collaterals under the will of Maria E. Swann was not subject to collateral inheritance tax, upon the ground that Mrs. Swann was never in actual fact seized and possessed of the property in controversy, her interest up to the time of her death having been contingent or a mere expectancy.

In Kingston's Estate, 28 W. N. C. 284, funds were appropriated by Congress to pay for the loss of the brig George Washington, owned by decedent. The heirs of the latter were collaterals and the Commonwealth claimed collateral inheritance tax on the fund. It was held not subject to the tax because the fund never formed part of decedent's estate and, therefore, did not pass from him to his collateral kindred.

In Matthiessen's Estate, supra, the decedent was not seized or possessed of the property in her lifetime; her

interest was merely contingent at the time of her death and did not ripen into an actual right of possession until two years after her death. The court held that the property passing under decedent's will, under the circumstances, was not subject to collateral inheritance tax.

In Commonwealth v. Thomas, supra, testatrix devised her estate to her husband for life, with remainder to her children, and one of the children died testate in the lifetime of her father; it was held that her devisees were not liable to collateral inheritance tax, since she did not have seisin or the right to possession at the time of her decease. It should be observed, however, that life estates as well as remainders, as such, are taxable when passing from the estate of the original decedent: Shugars et al. v. Chamberlain Amusements Enterprises, Inc., supra.

Then again, the tax is upon a transfer *from* the decedent seized or possessed thereof and not upon an estate passing *through* the decedent. The distinction between estates passing from the decedent and estates merely passing through the decedent is pointed out in Gebhard's Estate, supra, and need not be repeated. In the case at bar the transfer was not from Letitia S. Buechley; it was merely through her. The right of the heirs of the deceased beneficiary to take the insurance proceeds is by virtue of the contract of insurance and does not arise by reason of the statutes of descent and distribution: Wanzel's Estate, 295 Pa. 419. Unless the law clearly indicates that personal property is taxable, it cannot be taxed: Easby's Estate, 285 Pa. 60.

The insured had a right to designate the beneficiaries. He exercised that right by naming someone other than his estate. The passing of the proceeds of the policies upon the death of the insured to such beneficiaries is not subject to the tax. The act specifically so provides. Had Letitia S. Buechley survived her husband the proceeds of the policies would have been payable to her but, of course, the transfer to her would not have been taxable. Had she died after her husband, she would have been seized and

possessed of the proceeds in her lifetime and upon her death the transfer of the fund to her heirs would have been subject to the tax. But that is not what happened in this case. She died before her husband and, therefore, was neither seized nor possessed of the proceeds in her lifetime. The proceeds did not pass from her; they passed through her to her heirs. Her administrator was a mere conduit or trustee for transmission of the fund to her heirs at law under the intestate laws. Such transfer is not subject to the tax. Therefore, the claim of the Commonwealth is not allowed.

From G. Harold Watkins, Frackville.