BESSIE M. BALLINGER, EXECUTRIX OF THE ESTATE OF WALTER F. BALLINGER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32177.   Promulgated August 26, 1931.

*Lester B. Johnson, Esq.,* and *John B. Peery, C. P. A.,* for the petitioner.

*Frank T. Horner, Esq.,* and *R. Staubly, Esq.,* for the respondent.

1314

### OPINION.

MORRIS: The issue presented by the pleadings is whether there should be included in decedent's gross estate the proceeds of various insurance policies on decedent's life in the total amount of $391,-152.96, less the statutory exemption of $40,000. By stipulation of counsel the proceeds of thirteen policies, amounting to $99,564.01, remain to be considered, the petitioner having waived its assignment of error in so far as it relates to the proceeds of the other policies. We have, therefore, to determine whether respondent erred in including in decedent's gross estate $99,564.01, representing the proceeds of the said thirteen policies.

Section 302 of the Revenue Act of 1924 provides that the value of a decedent's gross estate "shall be determined by including the value at the time of his death of all property, * * * wherever situated":

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by decedent upon his own life.

Section 302 of said act further provides that:

(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

The undisputed facts show that the proceeds of the said thirteen policies were received by beneficiaries other than the insured or his estate, thereby bringing the issue within the last portion of section 302 (g), hereinabove set forth, which provides for the inclusion in the gross estate of the excess over $40,000 received by all other beneficiaries.

As each of the policies herein, except one, group policy No. 1458, was taken out prior to the effective date of the Revenue Act of 1918, the petitioner contends that the Board is governed by the decision of the Supreme Court in *Lewellyn* v. *Frick*, 268 U. S. 238. Petitioner further contends that to decide this proceeding under the doctrine laid down in *Chase National Bank* v. *United States*, 278 U. S. 327, would result in an absolute nullification of the *Frick* decision.

The *Frick* case involved four policies payable to decedent's wife and seven policies payable to his daughter. All of the policies had been taken out prior to the passage of the Revenue Act of 1918. Some of them were payable to Frick's estate, with no provision for change of beneficiaries, but were subsequently assigned to his wife and daughter, without reservation of power to revoke the assignment. Some were of like character, and were so assigned, with power to revoke the assignment. Some were made payable to Frick's executors, and subsequently, by arrangement with the company, were made payable to his daughter as beneficiary, without power reserved further to change the beneficiary. In others, the wife and the daughter were named as beneficiaries; the policies containing no power which enabled the insured to change the beneficiary. All the premiums were paid by Frick, and none of the assignments of the policies so made by him were at any time revoked. *Frick* v. *Lewellyn*, 298 Fed. 803, 804.

The lower court held that the tax imposed by the 1918 Act on the proceeds of these policies was invalid because that act proposed to

tax as a part of decedent's estate what was in fact no part of his estate, since the proceeds had vested in the beneficiaries prior to the date of decedent's death, and therefore there was no taxable transfer within the meaning of section 402 (f) of the Revenue Act of 1918. In the course of its opinion the District Court discussed the policies as follows (p. 810):

It is not debatable, therefore, that those policies in this case which named Mrs. Frick as beneficiary, with no power reserved to change the beneficiary, vested in her absolutely. It is scarcely less clear that those policies made payable to the personal representatives of the insured, but which were afterwards assigned by him, in his lifetime, without reservation in the assignment or policies to revoke the assignment, vested absolutely in his wife and daughter. Nor do I doubt that in those policies which contained no provision on the subject, but in which Mr. Frick by agreement with the company substituted his daughter as beneficiary, reserving no right to further change the beneficiary, the daughter's rights became vested at once. And, finally, I am of opinion that in the three policies in which the assured reserved a right to revoke the assignments to his wife and daughter, but never did so, the rights of the assignees were vested and absolute; that those rights vested immediately under the assignment, subject to a limitation, not a conditional estate, vesting at the time of death, but an estate which vested at once, subject to be divested by the happening of an uncertain future event. As that event did not occur, there was no divestiture.

Upon appeal, the Supreme Court, in *Lewellyn* v. *Frick*, 268 U. S. 238, affirmed the District Court's decree under the rule that "laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared," *Shwab* v. *Doyle*, 258 U. S. 529, 534, and other cited authorities.

In the instant proceeding all the policies in question were taken out on decedent's life prior to the effective date of the taxing statute, and all except one, group policy No. 1458, were taken out prior to the effective date of the 1918 Act. These policies were of different classes; eleven of them specifically named decedent's wife as beneficiary, if surviving, otherwise to decedent's executors, administrators or assigns; one, the standard accident policy, named decedent's wife as beneficiary in case of death, but contained no survivorship clause; and one, the first in point of time, made no reference whatever to a beneficiary. In nine of the policies decedent had the right to change the beneficiary named or revoke a prior assignment without the consent of the beneficiary; in one of the other four policies no beneficiary was named; one provided for assignments; one contained successive assignments, but reserved no power to revoke the last assignment; and the fourth was made payable to decedent's wife, if she survived him, without power reserved to change the beneficiary.

The policies herein are, in our opinion, analogous in so far as the transactions occurring between the insurance companies and the

insured are concerned, with the policies and the transactions with respect thereto which the District Court considered in the *Frick* case. It would seem, therefore, that the decision in the latter case should be controlling here, and we would so hold if it were not for the fact that since the *Frick* decision was handed down this principle of the tax law has been before the Supreme Court in other cases, and while the *Frick* case has not been specifically overruled, that decision must certainly be limited in its application in view of the language contained in these later decisions.

In *Chase National Bank* v. *United States, supra,* relied on by respondent, the decedent procured, after the effective date of the Revenue Act of 1921, three insurance policies on his life, each naming his wife as beneficiary, and each reserving to himself the right to change the beneficiary. The proceeds of said policies less the $40,000 exemption were included in decedent's gross estate by the Commissioner of Internal Revenue, and the estate paid the tax thereon under protest. A claim for refund was denied, and the executor brought suit in the Court of Claims to recover the tax as illegally assessed. The Court of Claims certified two questions to the Supreme Court, namely, (1) whether the tax imposed by the final clause of section 402 (f) of the Revenue Act of 1921, on life insurance policies payable in terms to beneficiaries " other than the decedent or his estate," is a direct tax on property and void because not apportioned; and (2) whether the tax imposed bears such an unreasonable relation to the subject matter of the tax as to render it void.

After stating that " similar questions were mooted by counsel, but not decided in *Lewellyn* v. *Frick,* 268 U. S. 238," the court answered both questions in the negative, and held that the termination of decedent's control over the disposition of the proceeds at death, brought about a completion of the shifting of the economic benefits of property which is the real subject of the tax just as effectively as would an actual exercise of the power.

The Board followed the rule enunciated in the *Frick* case in *Charles L. Harris, Administrator,* 5 B. T. A. 41; *Martha B. Phelps, Executrix,* 6 B. T. A. 648; and *Mercantile Trust Co.,* 13 B. T. A. 85, proceedings which arose under the Revenue Act of 1921. In *Edwin S. Rauh, Executor,* 19 B. T. A. 993, a proceeding arising under the 1921 Act, we distinguished that case from the three aforementioned cases, because their " findings of fact do not show that the insured reserved the right to change the beneficiaries * * *," and held that the rule announced in *Chase National Bank, supra,* and in *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, was controlling. See also our opinions in *Louis M. Weiller et al.,* 18 B. T. A. 1121; *William A. Cushman et al., Executors,* 19 B. T. A. 1012; *Max Dann*

*et al., Executors,* 20 B. T. A. 42; *Fannie C. Richardson et al., Trustees,* 20 B. T. A. 728; *Helena Liebes, Executrix,* 20 B. T. A. 731; *Max W. Feuerbacher et al., Executors,* 22 B. T. A. 734; *Marmaduke B. Morton, Administrator,* 23 B. T. A. 236; and *H. T. Cook et al., Executors,* 23 B. T. A. 335; the Court of Claims decision in *John L. Mimnaugh, Jr., Executor,* 66 Ct. Cls. 441; and the Circuit Court's opinions in *Means* v. *United States,* 39 Fed. (2d) 748, and *Heiner* v. *Grandin,* 44 Fed. (2d) 141.

Considering this proceeding in the light of the foregoing review of cited cases, we are of the opinion that, where the decedent reserved the right to change the named beneficiary, or to revoke a prior assignment, the proceeds of life insurance policies taken out by him upon his own life should be included in his gross estate. *Chase National Bank* v. *United States,* and *Reinecke* v. *Northern Trust Co., supra.* Applying this rule to the present case, we hold that the proceeds of the nine policies containing reservations in favor of the decedent, except group policy No. 1458, which is hereinafter more fully considered, should be included in his gross estate.

The remaining policies to be considered are the Prudential policy, No. 336000; the Penn Mutual policies, Nos. 118935 and 151194; the Connecticut Mutual policy, No. 255104; and group policy No. 1458. The proceeds of the Prudential and Penn Mutual policies should be included in decedent's gross estate, since there has been no showing that decedent had irrevocably parted with all the benefits accruing under the insurance contract in favor of his beneficiary. In a similar situation in *Lillian T. Latty, Executrix,* 23 B. T. A. 1249, we said:

For all that appears, the policies were subject to decedent's right until his death to change the beneficiary; and under such circumstances, the amount thereof in excess of $40,000 is by section 302 (g) properly included in the gross estate. *H. T. Cook et al., Executors,* 23 B. T. A. 335.

The record in this proceeding, in so far as it relates to these three policies, is incomplete, because the Prudential policy is a duplicate to replace the lost or destroyed original, and therefore shows none of the conditions, benefits, or privileges under which the policy was issued, while the photostats of the Penn Mutual policies fail to reveal the complete contract, since the privileges, benefits, and conditions of the policies, as set out on the second pages thereof, were entirely omitted from the exhibits submitted. Being unable to determine whether decedent reserved to himself certain of the rights and benefits commonly retained by the insured under contracts of insurance, we must approve the determination of the respondent.

The proceeds of the Connecticut Mutual policy, No. 255104, should be included in decedent's gross estate under section 302 (g), since the decedent specifically reserved to himself the proceeds of the cash

surrender value of this policy at maturity or upon surrender during his lifetime. A power in the decedent to surrender and cancel a policy is one of the " legal incidents of ownership " referred to by the Supreme Court in the *Chase* case, *supra*, and upon the termination of the power by death the beneficiary is freed from the possibility of being cut off by decedent and a transfer within the reach of the taxing power of the Government is thereby effected.

With respect to the group policy, it appears that the insurance was taken out by the Ballinger Company for its employees, and was not taken out by decedent upon his own life. The statute covers amounts received " by the executor as insurance under policies *taken out by decedent upon his own life*," and the excess over $40,000 received by all other beneficiaries from insurance *" taken out by decedent upon his own life."* Since the statute fails to provide for the inclusion of the proceeds of insurance policies taken out by others on the decedent's life, it would seem that Congress did not intend to include such proceeds in computing a decedent's gross estate. As to the group policy, therefore, we hold that the proceeds should be excluded from decedent's gross estate, because such policy was not taken out by decedent upon his own life.

*Decision will be entered under Rule 50.*