SALLY S. LEVY AND OTTO C: SOMMERICH, SURVIVING EXECUTORS OF THE LAST WILL AND TESTAMENT OF JOSEPH M. LEVY, DECEASED, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35226. Promulgated April 19, 1932.

Saul I. Radin, Esq., for the petitioners.
L. S. Pendleton, Esq., for the respondent.

OPINION.

STERNHAGEN: 1. At the time of his death in 1925, the decedent and his wife owned as tenants by the entirety real property in New York, having, it is agreed, a value of $30,000 at the time of death. They had acquired the property June 5, 1914, by warranty deed of conveyance for a valuable consideration subject to a purchase money mortgage executed by them. There is no evidence of the circumstances of its acquisition, and it must be assumed, therefore, consistently with the respondent's determination, that no part of the property was originally owned by decedent's wife or acquired by her from decedent for fair consideration, etc., *Henry M. Butzel, Executor*, 21 B. T. A. 188.

The petitioner contends that property held by the entirety may not be included in the gross estate, because, (1) the whole property is vested in the survivor by the original deed and not by the death, (2) the New York courts have so held in respect of the New York State transfer tax, and (3) a tax may not be retroactively imposed " to affect vested interests."

Following *Tyler* v. *United States*, 281 U. S. 497, the Board has decided that pursuant to the provisions of section 302 of the Revenue Act of 1924 and similar provisions of the Revenue Act of 1921, the gross estate includes property held by entirety at the time of death, irrespective of the date when the title in the entirety was created. *Ada M. Slocum, Executrix*, 21 B. T. A. 169; *Commerce Union Trust Co., Executor*, 21 B. T. A. 174; *Pennsylvania Co., etc., Executor*, 21 B. T. A. 176; *Henry M. Butzel, Executor, supra; Georgianna M. Romberger, Executrix*, 21 B. T. A. 193; *Bank of New York, Executor*, 21 B. T. A. 197; *Elizabeth Putnam, Executrix*, 21 B. T. A. 205; *Marmaduke B. Morton, Administrator*, 23 B. T. A. 236; *Elizabeth F. Bowditch, Executrix*, 23 B. T. A. 1265. See also *Third National Bank* v. *White*, 45 Fed. (2d) 911.

The law of New York in respect of the state's power to tax or the construction or application of its taxing statutes does not control the determination of the Federal tax and has nothing to do with the doctrine of Federal recognition of a state law of property. That doctrine fixes the legal character of the decedent's estate as an estate by the entirety, but leaves the Federal Government free to determine whether by its own taxing statutes such an estate is a part of the taxable net estate. *Weiss* v. *Wiener*, 279 U. S. 333. This Congress has done by section 302 (e).

Although the previous decisions above cited have clearly sustained the respondent's determination, it is now suggested by members of the Board that those decisions went too far in embracing property which had been held by entirety since before the estate tax of 1916—that is, which were acquired by the entirety at a time when no estate tax whatever was embodied in the taxing system. This view would reverse several of the Board decisions just cited, as well as subsume that in *United States* v. *Provident Trust Co. of Pennsylvania*, 281 U. S. 497, the Supreme Court was unaware of or had overlooked the fact that the entireties had been created in 1901, 1903 and 1912, and that the ground rents owned at death had been reserved at the time of the conveyance of 1923, although these facts clearly appear in the reports of the Board, 5 B. T. A. 1004, and the District Court (E. Dist. Pa., Sept. 10, 1928). The authority for this reversal is said to rest in statements found in the later opinions of the Supreme Court in *Coolidge* v. *Long*, 282 U. S. 582, and *Phillips* v. *Dime Savings & Trust Co.*, 284 U. S. 160, and the dissenting opinion of Mr. Justice Stone in *Heiner* v. *Donnan*, 285 U. S. 312. It is said that these later statements narrow the ground of the *Tyler* decision to the prevention of tax avoidance—a thought found only in the last sentence of the court's opinion. But, as has been stated, the *Provident* case involved entireties existing not only before the particular taxing statute, but also before the advent of the system of death duties

inaugurated by the 1916 Act, and as to all the entireties before it the court held them properly included within the gross estate. While there is some room in the statements found in *Coolidge* v. *Long*, *supra*, and *Phillips* v. *Dime Savings & Trust Co.*, *supra*, and the dissenting opinion in *Heiner* v. *Donnan*, *supra*, for the view that this Board's application of the *Tyler* decision was too broad, there nevertheless remains in the *Tyler* decision itself a discussion sufficient to support the reliance placed upon it in the earlier decision of this Board.

If, however, it were not so, there is nothing in *Coolidge* v. *Long*, *supra*, or *Phillips* v. *Dime Savings & Trust Co.*, *supra*, to require the conclusion that entireties created before 1916 are beyond the reach of the later estate taxes. At most, that question would be left untouched by the Supreme Court; and would, therefore, still remain subject to the precedent of the Board's earlier decisions. Consistently with those decisions, the respondent's determination that the value of the property held by the decedent and his wife as tenants by the entirety is within decedent's gross estate, is sustained.

2. In sixty-six of the policies of life insurance the insured decedent reserved until his death the right to change the beneficiary. The proceeds of these policies are properly part of the gross estate, *Chase National Bank* v. *United States*, 278 U. S. 237, irrespective of the date of the policies, *Louis M. Weiller, Executor*, 18 B. T. A. 1121; *George R. Cook Estate*, 23 B. T. A. 335; *Lillian T. Latty, Executrix*, 23 B. T. A. 1249; *Bessie M. Ballinger, Executrix*, 23 B. T. A. 1311; *David A. Reed, Executor*, 24 B. T. A. 166.

3. In forty-four of the life insurance policies the decedent had, on May 1, 1916, before any Federal estate tax, irrevocably designated his wife as the primary or direct beneficiary. He, however, retained until his death the right to designate " contingent beneficiaries," and, having elected the option of settlement whereby such contingent beneficiaries would receive the proceeds subject only to the prior right of the widow to a 3 per cent annuity, he thus until his death had power to control the disposition of the proceeds except such annuity. This power he exercised as late as 1921. Along with this power to shift the so-called contingent beneficiaries appears to have been the power to borrow on the policies, which, if we may draw inferences from the endorsements, was substantially exercised in 1921.

The question, therefore, is whether his death was the occasion of a statutory " transfer." While it must be recognized that the irrevocable designation of the primary beneficiary in 1916 is a point of difference from the situation dealt with directly in *Chase National Bank* v. *United States*, *supra*, we are of opinion that the situation

here is within the ambit of that decision taken together with *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and *Tyler* v. *United States*, *supra*. It seems clear that until his death the decedent had substantial rights which obstructed the free and assured use or expectation of ownership in the proceeds by any other, except the widow in her 3 per cent annuity for life, and that these rights embodied the economic benefit of borrowing on the fund. His death freed the contingent beneficiaries from the encumbrance of his control, shifted the economic benefit from him to them, and resulted in substantial accessions to them.

We hold, therefore, that the proceeds above $40,000 of all the policies were properly determined by respondent to be within the gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MATTHEWS, dissenting: I dissent from the majority opinion in so far as it holds that there should be included in the gross estate the value of the estate by the entirety created in 1914 and the proceeds of the 44 insurance policies in which the decedent's right to change the beneficiary was revoked on May 1, 1916. The Supreme Court has laid down the legal principle that transfers by gift and beyond recall, made prior to September 8, 1916, the date Congress first adopted the system of taxing transfers at death, are not to be included in the gross estate of the deceased donor, notwithstanding the fact that such transfers were made in contemplation of death or to take effect in possession or enjoyment at or after death. The creation of a tenancy by the entirety is similar to the making of a gift in contemplation of death, and the taking out of a life insurance policy payable to a designated beneficiary, with no right to change such beneficiary reserved to the insured, is similar to a gift to take effect in possession or enjoyment after death.

The Supreme Court in one opinion disposing of *Tyler* v. *United States*, *United States* v. *Provident Trust Co. of Pennsylvania*, and *Commissioner* v. *Girard Trust Co.*, reported in 281 U. S. 497, held, in the case of estates by the entirety in Maryland and Pennsylvania created after the passage of the applicable act, that the provision requiring the value of such estate to be included in the gross estate, except such part as originally belonged to the survivor, was constitutionally valid.

The question here raised, of such an estate by the entirety created before the act in effect at death, or even before September 8, 1916, came before this Board after the *Tyler* decision, and on authority

of that decision was resolved against the taxpayer in *Ada M. Slocum, Executrix*, 21 B. T. A. 169; *Commerce Union Trust Co., Executor*, 21 B. T. A. 174; *Pennsylvania Co. for Insurances on Lives, etc., Executors*, 21 B. T. A. 176; *Elizabeth Putnam, Executrix*, 21 B. T. A. 205. The basis of the Board's decisions in these cases is stated thus in *Pennsylvania Co. for Insurances, etc.:*

The question presented with respect to the tenancies by the entirety set up before the enactment of the Revenue Act of 1921 is whether the transfer of the husband's property to the wife was completed at the time the tenancy was so set up or at the time of death. If it was the death which completed the transfer of this property to the wife, a tax imposed at death is not retroactive and our decision must be governed by *Reinecke* v. *Northern Trust Co., supra*, and *Chase National Bank* v. *United States, supra*. If the transfer is a " completed transaction " (*Shwab* v. *Doyle*) so that decedent " had in his lifetime no longer either title or control " (*Knox* v. *McElligott*), then our decision is controlled by the decisions in the *Shwab* and *Knox* cases. *As we read the decision in Tyler* v. *United States, supra, it is based squarely and solely upon the ground that there was a transfer at death*, not in the strict sense of that word, but in the sense that the death was the generating source of important and definite accessions to the property rights of the surviving tenant; that the death passed into her hands property which had originally belonged to the decedent and which she had only then become entitled to hold and enjoy absolutely as her own. Had the court been of the opinion that the deed as tenants in the entireties was sufficient to transfer the property to the wife, the case would have been similar to *May* v. *Heiner, supra*. But since both the deed and the death were required to effect the transfer of the property from the original ownership of the decedent to the sole ownership of his wife, it would seem that, as in *Reinecke* v. *Northern Trust Co.*, and *Chase National Bank* v. *United States, supra*, the transfer was not complete until the death. If this be so, there is no retroactive application of the statute merely because the tenancies were created prior to the effective date of the act which levies the tax. [Italics supplied.]

There are decisions of the Board to the contrary. They are based upon *Nichols* v. *Coolidge* and the theory that the deed transferred the property to the surviving tenant; that nothing was transferred by the death. In view of the decision in the *Tyler* case, these decisions can no longer be regarded as correct.

I would not at this late date register my disagreement with our prior decisions if it were not for the comments on the *Tyler* decision made by the Supreme Court itself in *Coolidge* v. *Long*, 282 U. S. 582, which was rendered February 24, 1931, and in the more recent decision in *Phillips* v. *Dime Trust & Safe Deposit Co.*, 284 U. S. 160, rendered November 23, 1931, as well as by the comment of Mr. Justice Stone as to the basis of the *Tyler* decision, in his dissenting opinion in *Heiner* v. *Donnan*, 285 U. S. 312. The comments of the court and of Mr. Justice Stone clearly show that the basis of the *Tyler* decision was that an estate by the entirety is an appropriate subject of estate taxes and the taxation of such estate a suitable means to prevent the evasion of taxes.

In *Coolidge* v. *Long*, *supra*, the fundamental question was whether rights had so vested prior to the taking effect of the tax statute that there was thereafter no occasion in respect of which the excise, a state inheritance tax, might constitutionally be imposed. In reviewing its own decisions, the court said:

No act of Congress has been held by this court to impose a tax upon possession or enjoyment, the right to which had fully vested prior to the enactment.

*Tyler* v. *United States*, 281 U. S. 497, held constitutional sections 201 and 202 of the Revenue Acts of 1916, 39 Stat. 756, 777, 778, and of 1921, §§ 401, 402, 42 Stat. 227, 277, 278, which included in the gross estate the value of an interest held by decedent and any other person as tenants by the entirety. In each case, the estate was created after the passage of the applicable act; and none of the property constituting it had prior to its creation ever belonged to the surviving spouse. The court held that the acts did not impose a direct tax, because, putting aside a common-law fiction, and having regard to substance, the death of one of the parties was in fact the generating source of important and definite accessions to the property rights of the other. It held that the provisions were intended to prevent an avoidance of the estate tax by the creation of such tenancies, and were obviously neither arbitrary nor capricious, and so not violative of the Fifth Amendment.

And, again, it was said by the court in *Phillips* v. *Dime Trust & Safe Deposit Co.*, *supra*, with respect to estates by the entirety created after the first Federal estate tax act, but before the act effective at the grantor's death:

But it is urged that the tax imposed with respect to Groups (2) and (3) is invalid. As the creation of the tenancies by the entirety antedated the taxing act, and the earlier corresponding sections had been repealed, it is insisted that the statute is given a retroactive operation, such as that condemned by this Court in *Nichols* v. *Coolidge*, 274 U. S. 531; *Untermyer* v. *Anderson*, 276 U. S. 440; *Coolidge* v. *Long*, 282 U. S. 582. As §302(h) of the Act of 1924 specifically makes the quoted provision of subdivision (e) applicable to estates created or existing before the passage of the statute, the question presented is not one of its construction or applicability, but of the power of Congress to impose the tax. The Government argues that the tax was laid on the devolution of rights upon the wife at the death of her husband after the passage of the Act, and that therefore the statute was not applied retroactively, even though the estate was created before its enactment. *Without foreclosing consideration of this contention at another time, we find it unnecessary now, in view of the facts of the present case, to pass upon it.* [Italics supplied.]

Group 2. The tenancies in all of the items of the second group were created after the the passage of the 1916 Revenue Act. Congress had by that act adopted a system of death taxes, embracing, as it lawfully might, estates by the entirety. As was pointed out in *Tyler* v. *United States, supra*, pp. 503, 505, such estates are appropriate subjects of death taxes and the taxation of them is a suitable measure to prevent evasion of a system of taxation levied on estates passing at death by will or inheritance. In both respects they resemble gifts made in contemplation of death, likewise taxed by the estate tax provisions of the 1916 and later revenue acts. The considerations which led us, in *Milliken* v. *United States*, 283 U. S. 15, to uphold taxation of gifts in contemplation of death, made after the 1916 Act and before that of 1918, at the

higher rate of the latter act, are equally applicable here. The knowledge available before the creation of the estate that it was embraced within an established taxing system and that its taxation, on the same basis and in the same manner as decedent's estates, was an essential part of the system to prevent evasions, relieves the present tax of the objection that it is arbitrarily retroactive.

The *Milliken* case was decided March 2, 1931, a week after the *Coolidge* v. *Long* decision was rendered.

The question in issue in the instant case was present on the facts in only two cases decided by this Board since the *Coolidge* v. *Long* decision, *Marmaduke B. Morton, Administrator*, 23 B. T. A. 236, and *Elizabeth P. Bowditch, Executrix*, 23 B. T. A. 1265. In the *Morton* case we included in the decedent's gross estate the full value of two tracts of land which had been conveyed, respectively, in 1909 and 1911 to the decedent and his wife as estates by the entirety. In the *Bowditch* case, we likewise included in the gross estate several estates by the entirety some of which had been created before the 1916 Act. It does not appear that in either case the question of retroactivity was argued or considered in the light of the comment on the *Tyler* case in *Coolidge* v. *Long*.

I have found no District Court or Circuit Court case decided since *Coolidge* v. *Long* which involves an estate by the entirety created before 1916.

After careful deliberation upon the principle of *Tyler* v. *United States*, as it emerges on a rereading of that case in the light of the Supreme Court's subsequent decisions, it is clear that the principle is by no means so broad as we had at first supposed, for the decision in that case was clearly predicated upon the fundamental public policy of prevention of tax evasion, and what the court said, therefore, with respect to the propriety of including estates by the entirety in a general class with testamentary dispositions by reason of the accession of substantial property rights in such an estate to the survivor on the other tenant's death, must be construed in the light of that policy. Here two facts to which we have already adverted assume significance, that:

In each case the estate was created after the passage of the applicable act, and none of the property constituting it had, prior to its creation, ever belonged to the surviving spouse. [*Tyler* v. *United States, supra.*]

And on these facts the court said that "the evident and legitimate aim of Congress was to prevent an avoidance"; and pointed out that "the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end."

Moreover, in the *Dime Trust Co.* case, *supra*, in response to the Government's argument that the tax was laid on the devolution of

rights upon the wife at the death of her husband after the passage of the act, and that, therefore, the statute was not applied retroactively, even though the estate by the entirety was created before its enactment, the court said, per Mr. Justice Stone: "Without foreclosing consideration of this contention at another time, we find it unnecessary now * * * to pass upon it."

All of the decisions rendered by this Board since the *Tyler* case which involve estates by the entirety created at any time prior to the act effective at death, have been based on the view that the Supreme Court had considered and decided in the *Tyler* case the very question which the court so carefully reserved for future consideration in the *Dime Trust Co.* case. This assumption by the Board that the question had been considered and decided in the *Tyler* case loses all foundation.

In the *Tyler* case the court stated that the common law rule as to estates by the entirety was recognized by the decisions of the courts of Maryland and Pennsylvania, and that "these decisions establish a state rule of property, by which, of course, this court is bound." The common law rule as to estates by the entirety is that both tenants take title from the deed of conveyance and no estate passes in legal theory to the survivor upon the death of the other tenant.

What the court decided with respect to tenancies by the entirety in the *Tyler* case is that (1) by the inclusion of such estates created after the passage of the act effective at death, no part of which ever belonged to the survivor, in gross estate, the tax does not *pro tanto* become direct, but is plainly indirect, and (2), the inclusion of them is a suitable measure to prevent the evasion of a system of taxation levied on estates passing at death by will or inheritance. The present confusion, I think, has arisen from a misunderstanding of the extent of the first doctrine.

Going a step further, the court held in the *Dime Trust Co.* case that an estate by the entirety, created after Congress first adopted the system of taxation levied on estates passing at death by will or inheritance, which system embraced tenancies by the entirety, is subject to the tax imposed by a later estate tax act, such tax not being arbitrarily retroactive.

The court cited the *Tyler* case in *Milliken* v. *United States, supra,* in support of the doctrine enunciated that the inclusion of gifts in contemplation of death in a single class with decedent's estates to prevent evasion was a permissible classification. And in the *Dime Trust Co.* case the assimilation of these two classes—gifts in contemplation of death and estates by the entirety— was made explicit.

In the *Milliken* case the court pointed out that it had held that the taxation of gifts made and completely vested beyond recall, before the passage of any statute taxing them, to be so palpably

arbitrary and unreasonable as to infringe the due process clause, citing *Nichols* v. *Coolidge; Untermeyer* v. *Anderson;* and *Coolidge* v. *Long*, and that in *Nichols* v. *Coolidge* and *Untermeyer* v. *Anderson* the point was stressed as the basis of the decision, that the nature and amount of the tax burden imposed could not have been understood and foreseen by the taxpayer *at the time of the particular voluntary act which was made the occasion of the tax*.

Mr. Justice Stone, who delivered the opinion of the court in the *Dime Trust Co.* case and in the *Milliken* case, in his dissenting opinion in *Heiner* v. *Donnan*, *supra*, in which the court held unconstitutional the provision (§302(c) of the Revenue Act of 1926) by which a gift made within two years of death should be conclusively presumed to have been made in contemplation of death, makes the following comments:

* * * In *Tyler* v. *United States*, 281 U. S. 497, we upheld taxation, as a part of the donor's estate, of another selected class of gifts *inter vivos*, estates by the entirety donated by one spouse for the benefit of both, although the gift was not testamentary and *neither title, possession, nor enjoyment passed at death*. Similar taxation of gifts made *inter vivos*, but finally effective only at death, was sustained in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and *Chase National Bank* v. *United States*, 278 U. S. 327 ; see *Taft* v. *Bowers*, 278 U. S. 470, 482.

* * * In *Tyler* v. *United States*, 281 U. S. 497, 505, the tax on estates by the entirety, as a part of the decedent's estate passing to the surviving spouse, was upheld regardless of the motive which inspired it, and *the decision was rested on the sole and only possible ground* that " the evident and legitimate aim of Congress was to prevent an avoidance in whole or in part, of any of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds have been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part entirely appropriate as a means to that end." [Italics supplied.]

He also makes the following pertinent comment:

* * * A very different case would be presented if the taxed gift were made before the enactment of the taxing statute and many years before the death, as in *Frew* v. *Bowers*, 12 F. (2d) 625, 630. See *Nichols* v. *Coolidge, supra*. * * *

In the light of the comments of the court and of Mr. Justice Stone, the conclusion is inescapable, that an estate by the entirety created before the 1916 Act does not fall within the ambit of the *Tyler* case or the *Dime Trust Co.* case, for, as already pointed out, there could not have existed at the time of its creation any motive on the part of its grantor to evade the estate tax by creating such an estate in himself and his spouse. I think it equally clear from the decisions cited that estates by the entirety created prior to the passage of the 1916 Act are not subject to the estate tax imposed by that act or

later acts, as such tax would be arbitrarily retroactive. In support of this view we have not only the cases cited in the *Milliken* decision, but also the express authority of the Supreme Court's decision in *Shwab* v. *Doyle*, 258 U. S. 529, with respect to a gift in contemplation of death—to which estates by the entirety have been likened—made and completed before the 1916 Act. There a transfer made before the passage of the 1916 Revenue Act, although made in contemplation of death, and, therefore, within the estate-tax provisions of that statute, taxing such gifts made *at any time*, was held not includable on the ground that the act " should be not construed to apply to transactions completed when the act became a law." So in *Knox* v. *McElligott*, 258 U. S. 546, where the decedent was a joint tenant with his wife in an estate conveyed to them in 1912, the court refused to allow under the 1916 Act the inclusion of the one-half interest " in respect of which Jonas [the decedent] had in his lifetime no longer either title or control." The full vigor of the doctrine certainly seems unabated in *Coolidge* v. *Long*.

Nor does the addition of subsection (h) in the Revenue Act of 1924, making section 302(e) expressly retroactive and applicable to transfers " whether made * * * before or after the enactment of this Act," alter the situation, for the principle of *Nichols* v. *Coolidge* would control, and limit the effect of subsection (h) to the date of the enactment of the first estate-tax act on September 8, 1916.

The Supreme Court has held taxable as part of the gross estate transfers made before the first estate-tax statute by the decedent to the beneficiary, either immediately, or more frequently, mediately, as through trustees, in cases where the· power of revocation was reserved by the donor. In such cases the court has taken pains to point out that its decision was grounded on the presence of such an element, and that a transfer in substance resulted at death by reason of the decedent's reservation of powers of control over the gift for his own benefit until his death. The gift, although legally passing *inter vivos*, was, therefore, not completed in substance until the donor's death. There were strings tied to it which were severed by death. There is no such element of control present here. There was no power reserved or left in the decedent alone to alter, amend, revoke or change the estate that had vested in his wife the moment the conveyance was made. The gift was irrevocable and beyond recall.

The policy of prevention of tax evasion can not be invoked to justify the laying of an excise measured by property which does not, by the state rule of property governing, pass at death, and which, being vested and beyond recall by the decedent before any taxing statute was enacted, stops all inquiry as to whether it may reason-

ably be included in the general class of testamentary dispositions to prevent tax evasion. There can not be evasion of a tax not existing at the time the completed transfer is made.

In view of the decisions of the Supreme Court in *Coolidge* v. *Long*, *Milliken* v. *United States*, and *Phillips* v. *Dime Trust Co.*, and the light they throw on the real basis of *Tyler* v. *United States*, the decisions of the Board following the principle of that case as hitherto understood with respect to estates by the entirety created before the 1916 Revenue Act can no longer be regarded as correct.

I think, therefore, that the estate by the entirety in the instant case, having been created before the passage of the 1916 Act, was not properly included in the decedent's gross estate.

The majority opinion states that the above view " subsumes " that in *United States* v. *Provident Trust Co.*, one of three cases disposed of in *Tyler* v. *United States*, " the Supreme Court was unaware of or had overlooked the fact that the entireties had been created in 1901, 1903 and 1912, and that the ground rents owned at death had been reserved at the time of the conveyance in 1923, although these facts clearly appear in the reports of the Board, 5 B. T. A. 1004, and the District Court (E. Dist. Pa., Sept. 10, 1928). It also states: " But, as has been stated, the *Provident* case involved entireties existing not only before the particular taxing statute, but also before the advent of the system of death duties inaugurated by the 1916 Act, and as to all the entireties before it the court held them properly included within the gross estate."

Reference to the District Court decision in the *Provident* case shows that the ground rent in controversy held as tenants by the entirety was reserved by decedent and his wife in a conveyance dated June 19, 1923, which conveyed the fee of the three adjoining parcels of land acquired in 1901, 1903 and 1912. The other property in controversy which was held by decedent and his wife as tenants by the entirety at the date of death was acquired on June 23, 1923.

The facts with respect to the *Provident* case, as stated by the Supreme Court in its decision, are in part as follows:

In No. 546 which arose under the Act of 1921, the decedent and his wife, residents of Pennsylvania, held title to certain ground rent and to certain real estate in that State which had been conveyed to them as tenants by the entirety. The property had been acquired with the husband's separate funds and no part of the purchase price was furnished by the wife. The decedent died in 1923, leaving his wife the sole beneficiary under his will.

And with respect to all of the estates by the entirety involved in the three cases, the court said:

In each case the estate was created after the passage of the applicable act and none of the property had prior to its creation ever belonged to the surviving spouse.

I accept the statement by the Supreme Court, that in each case the estate was created after the passage of the applicable act, as referring to the ground rent, as it was one of the items in dispute in the *Provident Trust* case, and construe it to mean that such estate was created when the rent was reserved in the conveyance of June 19, 1923. In this the Supreme Court was only following the rule of property in Pennsylvania as to when ground rent vests in the grantor. See Law of Ground Rents in Pennsylvania, by Richard M. Cadwalader (Phila. 1879), especially Ch. IV, secs. 195–199; Purdan's Penn. Stat., title 68, ch. 6, Ground Rents, sec. 161, Perpetual Ground Rents not to be Created (law Apr. 22, 1850), and sec. 162, Irredeemable and Non-Extinguishable Ground Rents Prohibited (law June 24, 1885); Bouvier's Law Dictionary, *sub-nom.* " Exception," " Reservation," " Merger," " Ground Rent."

I come now to the insurance policy proceeds. For the same reasons indicated above with respect to estates by the entirety and on the authority of *Nichols* v. *Coolidge, supra, Untermyer* v. *Anderson, supra,* and *Coolidge* v. *Long, supra,* I think the proceeds from the 44 policies in which the right to change the beneficiary was waived by the insured and revoked by the company on May 1, 1916, are not includable in the gross estate of decedent. Subdivision (h) of section 302, which makes subdivision (g) retroactive, does not, under the authorities cited, apply to the proceeds of policies in which the right to change the beneficiary was revoked prior to the adoption of the system of taxing insurance policy proceeds as a part of decedent's gross estate.

The wife's interest in the policies was vested at the moment of her designation as beneficiary and was indefeasible from the date on which the right to change the beneficiary was revoked by the insurance company. What she acquired on that date was the indefeasible right in a contract under which she was entitled to receive the insurance payable on the death of the insured under the terms of the contract. This was a property right and was acquired prior to the adoption of the system taxing insurance policy proceeds payable to beneficiaries other than insured's estate as part of the insured's gross estate.

The majority opinion appears to be based on the ground that the decedent had powers of control until his death of the interest or expectations of contingent beneficiaries which were freed by his death and that such powers brought the policies within the scope of the *Chase* case and *Reinecke* v. *Northern Trust Co.* as to the two trusts which were held taxable.

The language used in the provisions of the policies under which the cash surrender value could be obtained, either upon the surrender of the policies or as a loan, is not such as to give the insured the right

to obtain such amount .on his sole request. *Whitehead* v. *New York Life Insurance Co.*, 102 N. Y. 44; 6 N. E. 267; see also section 52 of the Domestic Relations Law of New York. The beneficiary and any contingent beneficiaries would have to join in such request. The necessity of obtaining the contingent beneficiaries' consent could be obviated by revoking their designation as contingent beneficiaries, but this would still leave it necessary for the wife to join, as her designation could not be revoked. That this is what happened in obtaining a loan on certain of the policies may be inferred from the fact that the designation of contingent beneficiaries was revoked and the same persons redesignated within a few days subject to and without prejudice to the assignment of the policy to the company for a loan.

In the case of bankruptcy, the insured who has no right to change the beneficiary in a life insurance policy has no pecuniary interest in such policy, which passes to the trustee in bankruptcy without the consent of the beneficiary. *In re Simmons*, 255 Fed. 21.

The only rights which the assured alone could exercise after May 1, 1916, were the right to elect that settlement with the beneficiary be made under one of the options (in lieu of payment in one lump sum), and the right to name contingent beneficiaries and to revoke or change any contingent beneficiary not irrevocably named. The right to elect the mode of settlement to be made with the beneficiary was in effect the right to say in what form the insurance payable on his death should be paid to the beneficiary. The right to name contingent beneficiaries was nothing more than the right to say who would take in case of or after the beneficiary's death under the option settlement selected. The contingent beneficiaries (if living at the death of the beneficiary) would succeed to the interest of the beneficiary, and upon the death of the last surviving beneficiary the amount which had been retained by the insurance company would be paid to the children, if any, of the contingent beneficiaries, or if they left no children, to their executors and administrators. In case of the death of the contingent beneficiaries with no children surviving prior to the death of the beneficiary, the amount retained by the insurance company would be paid to the executors and administrators of the beneficiary.

It does not seem to me that either the exercise or termination of these rights in any way affected the interest of the beneficiary which was the right to receive the insurance payable under the contract on the death of the insured. Certainly the rights reserved solely to the insured were not such as gave him any control over the policies or their proceeds *for his own benefit*. What the insured did on May 1, 1916, as to each policy, was to make an absolute gift to his wife of an interest in a contract under which she was to receive on his death the

insurance payable either in a lump sum or in such other mode of settlement provided in the contract as the insured in his lifetime had directed, with the right also to name the persons who would take at her death. The powers reserved are similar to the reserved powers of management in the five trusts in *Reinecke* v. *Northern Trust Co.*, *supra*, and what was said in that case as to such reserved powers is also applicable here:

\* \* \* \* \* \* \*

Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. \* \* \* The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and \* \* \* the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to the tax.

The shifting of the economic interest in the amount to become due under the policies at his death, which was the subject of the tax, was complete as soon as the right to change the beneficiary was revoked. The insured's right to direct control of the amount to become due for his own benefit then ceased.

The majority view overlooks the fact that the pertinent provision of the statute requires only the amount receivable by beneficiaries as insurance on the life of the insured, at its value at the date of insured's death, to be included in gross estate and not the amount receivable by the contingent beneficiaries upon the death of the beneficiary. If the interest of the contingent beneficiaries at the death of the insured is more than a bare possibility, and has a value, it is includable in gross estate by virtue of some other provision than that in section 302(g). Certainly it was not intended by section 314(b) to give the executor the right to recover from the beneficiary any portion of the tax paid on the value at death of the decedent of any amount which might be paid to contingent beneficiaries upon the death of the beneficiary.

Where the insurance is payable to the beneficiaries in a lump sum upon the death of the insured, the lump sum receivable is the amount to be included in gross estate, but where the amount receivable by the beneficiary as insurance is in the form of an annuity, the regulations (No. 70) provide:

Art. 28. *Valuation of Insurance.*— \* \* \* In cases where the proceeds of a policy are made payable to the beneficiary in the form of an annuity for life or for a term of years, the present worth of the annuity at the time of death should be included in the gross estate. \* \* \*

The regulations recognize that the insurance payable under many life insurance policies is in the form of an annuity. Of the 110 policies on the life of this decedent, payable to beneficiaries other than the estate, in only 10 was the insurance payable in a lump sum.

In all the others, the insured had in his lifetime elected that settlement be made under one of the options, the settlement selected being under Option A, in the Northwestern Mutual Life Insurance policies, and its equivalent in the policies issued by other companies.

As the powers reserved solely to the insured in the 44 insurance policies were not such as gave the insured any control over the policies or their proceeds for his own benefit, they do not fall within the *Chase* case or the two trusts in *Reinecke* v. *Northern Trust Co.*, but rather within the principle applied in the case of the five trusts in *Reinecke* v. *Northern Trust Co.*, *supra*, and of *Nichols* v. *Coolidge*, *supra*, *Untermyer* v. *Anderson*, *supra*, and *Coolidge* v. *Long*, *supra*.

In reviewing the prior decisions of the Board involving section 302(g) and (h) of the Revenue Act of 1924, for the light they may throw on the retroactive provision, I find this question has not before been considered in express terms. In only two cases, *Philip W. Blood et al.*, Executors, 22 B. T. A. 1000, and *David A. Reed et al.*, *Executors*, 24 B. T. A. 166, was the instant issue present on the facts, and even there it was merely implicit and does not appear to have been directly raised. In the *Blood* case some of the policies had been issued and a beneficiary irrevocably designated by 1915, and with respect to these this Board held that the proceeds of such policies were not includable in the gross estate. In the *Reed* case, with respect to the policies in which the beneficiary had been designated in 1910, with no express power reserved to change, the Board held the proceeds likewise not includable. Nothing was expressly said, however, in either case as to the application of section 302(h) of the 1924 and 1926 Acts.

For the reasons expressed above, I think that the Board was correct in its decision in the *Blood* case and the *Reed* case.

ARUNDELL agrees with this dissent.