THE PENNSYLVANIA COMPANY FOR INSURANCES ON LIVES AND GRANTING ANNUITIES, FLORENCE W. HENDERSON AND D. WEBSTER BELL, EXECUTORS OF THE ESTATE OF J. D. C. HENDERSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44756. Promulgated February 28, 1934.

*Joseph A. Lamorelle, Esq.*, for the petitioners.
*Frank T. Horner, Esq.*, for the respondent.

## OPINION.

Van Fossan: In addition to the facts set out in our findings of fact the parties conditionally stipulated the contents of certain letters written by various officials of the several insurance companies to the executors or their attorneys purporting to interpret or construe various provisions of the several insurance contracts and to indicate the position the companies would have taken had certain questions been presented to them for decision. Mutual reservations were made to preserve the rights of the parties on appeal in event of the respective admission or rejection of the offered evidence. The stipulation went only to the authenticity of the letters and did not purport to cover their competency, relevancy, or materiality as evidence.

On consideration of the matter we are of the opinion that the evidence is inadmissible and have omitted the same from our findings. The statements found in the several letters written at the instance of the petitioners are of various purport. Some are mere statements of the contents of the policies, but largely they represent the interpretation the company would have given to the contract provisions. As such they are in the nature of opinion evidence on a matter not requiring or permitting opinion evidence. The contracts are not, in our opinion, ambiguous or obscure. Their interpretation is a matter for the tribunal in which the controversy is being adjudicated. In short, we believe the questions to which these letters were

addressed are among the questions which we have to decide by our own examination of the contracts. To admit the letters as evidence would be to abdicate *pro tanto* our own functions. What the company would or would not have done in various given situations does not determine the legal rights of the parties. See *Sampson* v. *United States*, 1 Fed. Supp. 95. Assuming an unfavorable interpretation by the company, the legal rights of the beneficiary would have been fixed by the courts to which resort would have been open.

The respondent relies on *Chase Nat. Bank* v. *United States*, 278 U.S. 327, to support his contention that the proceeds of policies Nos. 1 to 14, inclusive, in excess of $40,000 are subject to inclusion in the decedent's gross estate by reason of their containing clauses reserving to the insured the right to change the beneficiary. The petitioners challenge the inclusion, for tax purposes, of the proceeds of all policies, whether containing such reservation clause or not, taken out prior to the enactment of the Federal estate tax act, or prior to the Federal estate tax act in effect at the time of the decedent's death, and cite *Lewellyn* v. *Frick*, 268 U.S. 238, to sustain their view of the case.

In *Bessie M. Ballinger, Executrix*, 23 B.T.A. 1312, we discussed at length the effect of the decision in the *Frick* case upon facts similar to those in the case at bar in that policies antedating the revenue acts were involved, and there held that " where the decedent reserved the right to change the named beneficiary, or to revoke a prior assignment, the proceeds of life insurance policies taken out by him upon his own life should be included in his gross estate," applying the rule laid down in *Chase Nat. Bank* v. *United States, supra.* See also *Helena Liebes, Executrix*, 20 B.T.A. 731; affd., 63 Fed. (2d) 870; *Philip W. Blood et al., Executors*, 22 B.T.A. 1000; *David A. Reed et al., Executors*, 24 B.T.A. 166; *Richmond Trust Co., Executor*, 28 B.T.A. 152; *Sally S. Levy et al., Executors*, 25 B.T.A. 1174; affirmed as to that point, 65 Fed. (2d) 412. We do not believe *Lewellyn* v. *Frick, supra*, to be controlling in the instant case.

The proceeds of policies numbered 1 to 14, inclusive, should be included in the gross estate.

The respondent asserts that he erred in his original action in excluding the proceeds of policies Nos. 15 to 20, inclusive, from the taxable estate and now contends for an increased deficiency.

In none of these policies was the right to change the beneficiary reserved. Respondent maintains, however, that each of these policies carried provisions that were valuable to the decedent in his lifetime and prevented the estate from vesting in the beneficiary until the death of the decedent. We are of the opinion the respondent is correct in his present position as to five of the policies. As appears in

our findings of fact, five of these policies variously carried provisions for loan privileges, cash and paid-up values and other similiar provision or options, exercisable by the insured. They were all 20-payment life policies. We are cited to no statutory provision in the law of Pennsylvania requiring the consent or joinder of the beneficiary in applications for loans or in exercising the other privileges granted the insured by the policies. On the contrary, it has been held that the insured may borrow under the " cash loan " clause without the beneficiary's consent, notwithstanding the latter's vested interest. *Schuberth* v. *Prudential Ins. Co. of America*, 86 Pa. Super. Ct. 80 (1925). See also provisions of the Insurance Law of Pennsylvania, par. 510, Title 40, Purdon's Pennsylvania Statutes Annotated. This fact distinguishes the case of *Levy* v. *Commissioner*, 65 Fed. (2d) 412, which was controlled by the laws of New York. The proceeds of these policies should be included in the taxable estate. *Bessie M. Ballinger, Executrix, supra; Sampson* v. *United States, supra; Chase Nat. Bank* v. *United States, supra.*

As to policy No. 19 a different situation obtains. This policy bears no provisions comparable to those just referred to. On the margin of the policy is a notation in handwriting indicating that the present policy superseded a former policy and referring to the original application. No copy of the former policy or application was submitted. Since the burden of proving the facts as to this policy was assumed by respondent when he asked affirmative relief, he must abide the consequences of the failure of proof.

*Decision will be entered under Rule 50.*