*539 OPINION.
Seawell.
1. At the time of his death decedent had 5,012 shares of the Stephen F. Whitman & Son, Inc., class A stock. Under a stockholder’s pooling agreement outstanding, certain parties to the agreement had the right to purchase the stock at its book value, which was ascertained to be $123.11 per share. At this value it was sold by petitioners and included by them in the estate tax return. This value, however, did not include an 8 percent dividend declared on the stock on March 1, 1926, payable March 15, 1926. The right to the dividend was a property right and belonged to decedent’s estate and was taxable as such. Sec. 302 (a), Revenue Act of 1926. John F. Degener, Jr., et al., Executors, 26 B.T.A. 185, and cases therein cited. We sustain the respondent’s ruling on this point.
2. Petitioners contest the inclusion in the gross estate of the proceeds of two of the insurance policies only, as shown in our findings of fact. The beneficiary named in these two policies is the widow of the deceased. There was no reservation of a right to substitute beneficiaries. The insurance was payable to “ Edith Huggard Sharp, wife of the insured ” if living at the time of the death of the insured, “otherwise to the executors,” etc., of the insured. Each *540 policy was “ issued and accepted ” subject to certain “ benefits, privileges and conditions,” among which were the right to receive a certain sum of money at the maturity of the policy, the right to surrender the policy before maturity and receive the cash surrender value thereof as set forth in the table of values attached to each policy, and, if the policy was not so surrendered, the right to pledge it before maturity for a loan or loans in amounts depending on the cash surrender value thereof. Each policy had been so pledged and at the time of the death of decedent was “ legally assigned ” to and held by the insurance company. It was recently held in cases wherein no power of substitution of beneficiaries was reserved that the proceeds of insurance policies “ should be included in decedent’s gross estate under section 302 (g), since the decedent specifically reserved to himself the proceeds of the cash surrender value of this policy at maturity or upon surrender during his lifetime.” Bessie M. Ballinger, Executrix, 23 B.T.A. 1312, 1318, and Pennsylvania Co. for Insurance on Lives, etc., Executors, 29 B.T.A. 1306.
While the decedent lived there was always the possibility that the named beneficiary might predecease him, or that the policy by reason of nonpayment of premiums might lapse and become void, or it might be surrendered for its cash surrender value by the insured. In any such case the beneficiary would receive nothing. The insured might borrow money and pledge the policy, in which event the beneficiary’s interest would be lessened to the extent of the loan. The death of the insured put an end to these possibilities and made complete the “ shifting of the economical benefits of the property ”, and is the “ identifiable event ” which points to the transfer which is taxable. Chase Nat. Bank v. United States, 278 U.S. 327; Sampson v. United States, 1 Fed. Supp. 95. Cf. Sally S. Levy et al., Executors, 25 B.T.A. 1174 (reversed in part, 65 Fed. (2d) 412).
We conclude, under the conditions attached to the two contested policies, that they also should be included with those uncontested policies in the gross estate; and we accordingly sustain respondent’s determination on this point. This ruling in no way conflicts with the court’s decision in Anthracite Trust Co. v. Phillips, 49 Fed. (2d) 910, or other authorities cited and relied on by petitioners.
3. Petitioners having abandoned, rightfully under the law, all allegations of error as to the third issue, the respondent is sustained as to that issue. . ■
4. The determination of respondent that decedent transferred to five certain trusts property which, after the -deduction of the value of $5,000 allowed in respect to each trust, aggregated the sum of $178,220.50, is prima facie correct. The witness Norris testified that *541 there were six trusts made and executed March 12, 1926, one for Mrs. Sharp and one each for the fire children. It is not difficult to understand, and it seems to be agreed, that the transfers here involved were those in the five trusts for the children. At least they were not the transfers by the trust copied, in the equity suit as Exhibit 0, referred to in the findings of fact, which purported to include only one item of property and that not of the value here involved, and in that instrument Mrs. Sharp was the primary beneficiary alone. The failure to introduce the trust instruments, or any of them, in evidence, may be immaterial, since the controversy under this issue was confined by the parties on the hearing and in the briefs to the sole question as to whether the transfers by the trusts were made in contemplation of or intended to take effect in possession or enjoyment at or after death. Sec. 302 (c) of-the Revenue Act of 1926, amended March 3, 1931.
The trusts were made only one day before the death of the grantor. At the time the trusts were made decedent also made his last will and testament. These facts point to, but do not necessarily answer the issue. While the will necessarily falls within the provisions of the statute, since it takes effect at death, nowhere in the evidence was any other connection between the execution of the trusts and the will shown except in the point of time and the further fact that the same lawyer prepared them all. This incident of time and the circumstance of the execution of the will and trusts on the same day are not sufficient, we think, to overcome the other evidence in the case. The evidence was at considerable length, and it all pointed to the fact that motives and purposes other than the .contemplation of death actuated the execution of the instruments, as shown succinctly in our findings of fact. Decedent was not then sick; he had not been seriously sick in years; he was busily engaged about his business and in making plans for business activity for the years ahead; for the immediate future he was to attend'that evening a supper party. In the midst of life he was in the midst of death and knew it not. Even after the fatal malady seized him he signed the payroll checks of his business and expired before he could return to his bed, a victim of a first attack of angina pectoris. When decedent signed the trust deeds we are of the opinion he had reason to believe and did believe that he would not die until some fairly remote time thereafter. We are further of the opinion that decedent’s motive in executing the trust instruments and making the transfers in question was not in contemplation of death and was not testamentary in nature. United States v. Wells, 283 U. S. 102. Upon this issue we overrule respondent and sustain petitioners.
5. With reference to the items under this head in the amounts of $19,926.80 Pennsylvania Power & Light 1st 5 percent bonds and *542 Baltimore & Ohio R. R. ref. bonds due in 2000, and $15,093.75 bonds of the Metropolitan Edison Co., 5’s 1953, respondent in his brief concedes that they are not taxable unless the transfers were made in contemplation of death. We hold that the gifts were not made in contemplation of death, and that these items should not be included in the gross estate.
As to the other items under this head, they were never included in any trust and never delivered by way of gift to any person, but they remained the property of decedent at the time of his death and should be included in the gross estate, and the respondent is sustained as to them. Marshall v. Commissioner, 57 Fed. (2d) 633; certiorari denied, 287 U.S. 621. The action of the Court of Equity of Pennsylvania in adjudging certain bonds (assumed to be those here involved) to belong to Edith Huggard Sharp as surviving trustee of a trust of Walter P. Sharp, grantor, to Walter P. Sharp and Edith Huggard Sharp, trustees, is in no sense binding on the Board of Tax Appeals in the controversy here present. As said in Joseph Walker Wear et al., Executors, 26 B.T.A. 682, 685; aff'd., 65 Fed. (2d) 665, “ in determining whether or not there has been a transfer under the Federal statute we must look to the interpretations adopted by the Federal courts and tribunals.” See Edward J. Haney, Executor, 17 B.T.A. 464; Chase Nat. Bank v. United States, supra.
Reviewed by the Board.

Judgment %tiül be entered under Bule 50.